Peter J. PINAUD, Petitioner–Appellant,

v.

J.R. JAMES, Warden, Federal Correctional Institution, Otisville, New York; J. Michael Quinlan, Director, United States Bureau of Prisons; Edwin Meese, Attorney General of the United States; and Daniel Lopez, Regional Commissioner, Northeast Region, United States Parole Commission, Respondents–Appellees.

No. 972, Docket 87–2518.

United States Court of Appeals, Second Circuit.

Argued May 5, 1988.
Decided June 14, 1988.

28

Jared J. Scharf, White Plains, N.Y., for petitioner-appellant.

James L. Cott, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., New York City, on the brief), for respondents-appellees.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Peter J. Pinaud, a federal prisoner, appeals from a final judgment of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, dismissing his petition pursuant to 28 U.S.C. § 2241 (1982) to require federal prison officials to grant him credit for time he served on a state sentence which was subsequently vacated. The district court denied the petition on the ground that 18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987, by Pub.L. No. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended by Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985) and Pub.L. No. 100–182, § 2, 101 Stat. 1266 (1987); amended, and reenacted in part as 18 U.S.C. § 3585 effective Nov. 1, 1987, by the same legislation), provided that the date on which a federal sentence begins to run is the date on which the defendant is delivered to federal prison authorities. On appeal, Pinaud contends principally that the denial of credit violates his rights under § 3568 and the Due Process Clause of the Constitution. For the reasons below, we disagree.

## I. BACKGROUND

As set forth in greater detail below, Pinaud's claim has its origin in a state-court conviction pursuant to a plea agreement in which the state court promised that Pinaud's state sentence would be served concurrently with an expected federal sentence. The state court sentenced Pinaud prior to imposition of the federal sentence, however, and the latter was not made concurrent with the state sentence. Because the state plea bargain had not been fulfilled, a state appellate court eventually vacated the state conviction. By that time, however, Pinaud had already served his state sentence, and he therefore asks the federal court to reduce the length of his federal sentence by the length of time he served on the state court sentence.

### A. *The Sequence of Sentences*

In 1983, Pinaud, a former Internal Revenue Service revenue agent, was indicted in

state court on charges of possession of stolen property. At that time, he was expecting to be indicted in the Eastern District of New York on unrelated federal charges of tax fraud. Pursuant to a state-court plea agreement entered into in May 1984, Pinaud pleaded guilty to the stolen property charges; the state court promised that Pinaud would not be sentenced earlier than November 7, 1984, and that Pinaud's state sentence would be made concurrent with his anticipated federal sentence.

The scripted sequence did not occur, however, in part because, in the words of Pinaud's counsel, "[u]nfortunately, [Pinaud] committed another crime in the northern district during that summer." Thus, Pinaud was arrested in October 1984 in the Northern District of New York on federal charges of filing fraudulent tax refund claims in June 1984. In addition, having failed to appear in June and July for scheduled state-court hearings relating to his anticipated sentencing, Pinaud was arrested on state charges of jumping bail. The state court promptly revoked Pinaud's bail, and on October 17, 1984, it sentenced him to serve 2⅓ to 7 years in prison on the stolen property charges. Pinaud was remanded to begin serving this sentence immediately.

On October 31, 1984, Pinaud was indicted in the Northern District on four counts arising out of his June 1984 filing of false claims for income tax refunds, in violation of 18 U.S.C. § 287 (1982). He pleaded guilty to two counts in January 1985. In March 1985, District Judge Neal P. McCurn sentenced him to two concurrent 44–month terms of imprisonment, to be served consecutively to his state sentence.

In February 1985, the long-anticipated Eastern District indictment was handed down. Pinaud was indicted on 16 counts charging conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (1982), willfully subscribing to false returns in violation of 26 U.S.C. § 7206(1) (1982), and willfully attempting to evade taxes in violation of 26 U.S.C. § 7201 (1982). He pleaded guilty to two counts in May 1985. In July 1985, then-District Judge Frank X. Altimari sentenced him to two concurrent three-year terms of imprisonment, to be served consecutively to the Northern District sentence.

In March 1986, Pinaud moved in state court to vacate his state conviction on the ground that the plea agreement had been breached. His motion was denied, but the denial was reversed on appeal to the Appellate Division, *see People v. Pinaud*, 132 A.D.2d 580, 517 N.Y.S.2d 560 (2d Dep't), *appeal denied*, 70 N.Y.2d 802, 516 N.E.2d 1233, 522 N.Y.S.2d 120 (1987). Thus, Pinaud's state conviction was vacated in July 1987. Pinaud had completed serving his state sentence in February 1987.

### B. *Pinaud's Attempts To Have His Federal Sentences Reduced*

Pinaud was delivered to the Federal Correctional Institute in Otisville, New York ("Otisville"), to begin serving his Northern District sentence on February 6, 1987. In August 1987, he asked respondent J.R. James, warden at Otisville, to grant him credit for the 828 days that he had spent serving his subsequently vacated state sentence, on the ground that that time had delayed the commencement of his federal sentences.

Initially, the warden granted Pinaud the requested credit, and the United States Parole Commission recomputed his presumptive parole date to February 28, 1988. Thereafter, the Bureau of Prisons, having been informed by state prosecutors that the state had requested leave to appeal the vacation of Pinaud's conviction and having otherwise reviewed the matter, determined that credit should not have been granted. Apologizing for dashing Pinaud's expectations, the Bureau wrote Pinaud's attorney as follows:

> Regretfully, I must inform you that Mr. Pinaud should not have been awarded the 828 days of credits. Institution staff erred by misinterpreting our program statement relating to jail time credits.
>
> The federal courts have held that a voided or invalid state sentence does not count as time served toward an unrelated federal sentence. Therefore, based on

the circumstances surrounding Mr. Pinaud's state conviction, it is our position that he is not entitled to the credits previously awarded.

In October 1987, Pinaud commenced the present proceeding pursuant to 28 U.S.C. § 2241, seeking to compel the prison officials to grant him credit for the time spent on the state sentence. The district court denied the petition, stating as follows:

> The principle to be distilled from the cases and the statute, which is previous, 18 United States Code, Section 3568, is that no credit is given on a federal sentence for time improperly served on an unrelated state charge, even if the unrelated state sentence is later vacated.

> And the essential reason for that principle, as given in the cases, is that it is compelled by the language of the statute, which provides that the federal sentence shall start to run from the date on which the prisoner is received at the federal facility and that no sentence shall prescribe any other method of computing the term.

Judgment was entered dismissing the petition, and this appeal followed.

## II. DISCUSSION

On appeal, though Pinaud concedes that his two federal sentences were lawfully imposed, he contends that it is unfair not to credit him with time served on a state sentence that has been vacated. Two intersecting principles lead us to conclude that the decision of the district court must be affirmed.

■ First, the federal district court has the undoubted power to impose a federal sentence that is not to commence until service of an existing state sentence for an unrelated offense has been completed. *See, e.g., Salley v. United States*, 786 F.2d 546, 547 (2d Cir.1986) ("right of federal judges to impose such a sentence has been recognized for many years") (citing cases); *United States v. Lee*, 500 F.2d 586, 587–88 (8th Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 322, 42 L.Ed.2d 279 (1974); *Green v. United States*, 334 F.2d 733, 736 (1st Cir.

1964) ("[c]ertainly there is no impropriety ... in imposing a federal sentence to commence upon completion of a state sentence presently being served"), *cert. denied*, 380 U.S. 980, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). Further, even if the state sentence has been imposed with the expectation that it will be served concurrently with a yet-to-be imposed federal sentence, the federal court need not make its sentence concurrent with the state sentence but remains free to make the federal sentence consecutive. *United States v. Sackinger*, 704 F.2d 29, 32 (2d Cir.1983). Thus, in *Sackinger*, we stated that "under the dual sovereignty principle Sackinger could not, by agreement with state authorities, compel the federal government to grant a concurrent sentence." Where the federal officials are not parties to the state plea bargain, we "reject any implication that the federal court is obligated to comply with terms of a plea agreement entered into between the defendant and state authorities." *Id.*

■ The second principle is that embodied in § 3568, which governs the calculation of federal sentences imposed for crimes committed prior to November 1, 1987. That section provides, in pertinent part, as follows:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed....

> . . . .

> No sentence shall prescribe any other method of computing the term.

18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987, by Pub.L. No. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended by Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985) and Pub.L. No. 100–182, § 2, 101 Stat. 1266 (1987); amended, and reenacted in part as 18 U.S.C. § 3585 effective Nov. 1, 1987, by the same

legislation). Except in one circumstance not relevant here, *see United States v. Gaines*, 449 F.2d 143, 144 (2d Cir.1971) (credit granted where defendant was unable to enter federal custody "solely because he lacked sufficient funds to post bond in the state court which held him in custody"), courts have uniformly interpreted the language of § 3568 and its predecessors as precluding the calculation of the time served on a federal sentence from any date other than that on which the defendant was delivered to federal prison officials. Thus, even state prisoners whose state sentences have been vacated have been held not entitled to credit on unrelated federal sentences. *See, e.g., Scott v. United States*, 434 F.2d 11, 21 (5th Cir.1970); *Green v. United States*, 334 F.2d at 736; *see also Emig v. Bell*, 456 F.Supp. 24, 26 (D.Conn.1978) (Newman, *J.*) ("The starting point ... is the fundamental proposition that time served on an unrelated state sentence that has been voided cannot be credited against a federal sentence.").

■ Application of these principles requires affirmance of the denial of Pinaud's motion to compel federal prison officials to deduct 828 days from his federal sentences. Although the record is silent as to whether Pinaud—who apparently was represented by the same attorney with respect to all three of his sentences—urged Judges McCurn and Altimari to make his federal sentences concurrent with his state sentence, it is immaterial whether he did so or not. If he did, it was, as we have discussed above, well within the discretion of the district judges to reject his request. And if he did not, "he has no complaint." *Salley v. United States*, 786 F.2d at 549 (Newman, *J.*, concurring).

Nor does the present record indicate that Pinaud falls within the exception envisioned by *Sackinger* for circumscription of the sentencing judge's power when the federal authorities have been party to the state-court plea bargain. Although Pinaud's counsel argued orally in the district court that prior to the state-court plea bargain, an Assistant United States Attorney ("AUSA") for the Eastern District of New York had "agreed that her case could be finished up by June or July of '84," the record before us contains no evidence of such an "agree[ment]." At the May 1984 state-court plea hearing, Pinaud's attorney, though he apparently had been in frequent contact with the Eastern District AUSA, made no reference whatever to any promise or agreement on the part of the federal authorities; and the assistant district attorney merely said that he had spoken to the AUSA and "asked her to see what she can do to speed up the federal case so that can be disposed of as quickly as possible between now and Halloween." Pinaud stated that no promises other than those disclosed on the record at that hearing had been made to him. Thus, we see no evidence of any promises by the AUSA that would have required Judge Altimari to make the Eastern District sentence concurrent with the state sentence. Indeed it is noteworthy that Judge Altimari's sentence was not even the first federal sentence imposed on Pinaud following his plea bargain, and that the first federal sentence, imposed by Judge McCurn in the Northern District, could not have been anticipated at the time of the state-court plea bargain, because Pinaud had not yet even committed his Northern District crimes. The Eastern District sentence was in fact made consecutive to the intervening Northern District sentence, which had been made consecutive to the state sentence.

In accordance with Judge McCurn's order that Pinaud's service of the Northern District sentence not commence until the state sentence had been served, Pinaud was not delivered to federal custody until February 6, 1987. Under § 3568, the prison officials were required to calculate his federal term as having commenced on that date. Since the state offense was unrelated to either of the federal offenses, Pinaud was entitled to no credit. To hold that Pinaud must be given credit for the time served on his state sentence would in effect eliminate the power of the federal court to impose a consecutive sentence whenever there has been a state sentence based on a plea bargain in which the state court has promised that the sentences will

be concurrent. Because the state and the United States are separate sovereigns, the state judge has no power to enforce such a promise. Pinaud is not entitled to have us enforce it indirectly by ordering that the federal sentence be reduced by the time served on the state sentence.

Finally, we note that, although it is hardly clear from the record that Pinaud did all that he could to avoid service of 828 days on his state conviction (though the state plea bargain was violated in October 1984, he did not appeal the conviction; and though the first consecutive federal sentence was imposed in March 1985 and the second in July 1985, it was not until March 1986 that Pinaud moved in state court to have his conviction vacated), we do not suggest that Pinaud is entitled to no relief in consequence of having served time in prison on account of a state sentence that was later vacated. But any violation of his rights is the responsibility of the state, and it is to the state that he must look for redress. It would be inappropriate to rule that, because his rights may have been violated by the state, the mandatory provisions of a federal statute must be ignored or the sentencing discretion of the federal court curtailed.

## CONCLUSION

We have considered all of Pinaud's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent.

The majority correctly notes that there is an exception to the basic rule that federal sentence time runs from the date federal custody begins, but fails to see that the constitutional principle underpinning that exception is equally applicable to Pinaud.

Both the Second and the Eighth Circuits had interpreted 18 U.S.C. § 3568 as unambiguously disallowing credit toward a fed-

eral sentence for time spent in state custody on unrelated offenses, even where that custody resulted from the state's having set impermissibly high bail. *See United States v. Gaines*, 436 F.2d 1069, 1070 (2d Cir.1971); *In re Nelson*, 434 F.2d 748 (8th Cir.1970). On application of Gaines and Nelson to the Supreme Court for a writ of certiorari, the Solicitor General filed with the Court a memorandum for the United States [1] urging that not to allow the petitioners credit for "dead time" was contrary to the principles of, inter alia, *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed. 2d 130 (1971), and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), cases holding that to subject a certain class of defendants to imprisonment by reason of indigency was violative of the Equal Protection Clause. The Supreme Court vacated both Gaines's and Nelson's convictions and "remanded for reconsideration in light of position asserted by the Solicitor General in the Memorandum of the United States." *Nelson v. United States*, 402 U.S. 1006, 91 S.Ct. 2193, 29 L.Ed.2d 428 (1971); *Gaines v. United States*, 402 U.S. 1006, 91 S.Ct. 2195, 29 L.Ed.2d 428 (1971). On remand in *Gaines*, this court interpreted the rationale of the Supreme Court as follows: because Gaines was held in pretrial state detention for financial inability to post bail, and that unconstitutional detention made it impossible for Gaines to begin serving his federal sentence, the time spent in unlawful state custody was to be credited toward Gaines's federal sentence. *See United States v. Gaines*, 449 F.2d 143, 144 (2d Cir.1971).

Pinaud argues, persuasively, I believe, that there is no rational justification for allowing an exception to the federal statute where the constitutional violation by the state is impermissible discrimination on the basis of wealth (*Gaines* and *Nelson*) and not where, as here, the defendant was prevented from beginning service of his federal sentence solely because of a Sixth Amendment violation.

---

1. The memorandum is reprinted as Appendix A to *United States v. Sockel*, 368 F.Supp. 97, 100 (W.D.Mo.1973).

Pinaud's sentence was vacated because it was improperly induced by the state trial judge's assurance that any state sentence would run concurrently with any prospective federal term of imprisonment, a promise which, of course, the judge was without power to implement. *See People v. Pinaud*, 132 A.D.2d 580, 517 N.Y.S.2d 560 (2d Dep't), *appeal denied*, 70 N.Y.2d 802, 516 N.E.2d 1233, 522 N.Y.S.2d 120 (1987). Conviction and incarceration pursuant to pleas induced by such broken promises were held unconstitutional in *Santobello v. New York*, 404 U.S. 257, 94 S.Ct. 495, 30 L.Ed.2d 427 (1971). Thus, were it not for the violation of Pinaud's constitutional rights by the State, he could have begun serving his federal sentences when they were imposed.

The district court, in construing section 3568, relied on cases which, with a single exception, are distinguishable from Pinaud's. As appellant argues, in some of these cases the defendant was "requesting credit on a future unrelated sentence for a crime not yet perpetrated at the time of the previous void sentences." *Bowen v. Murphy*, 693 F.2d 104, 105 (10th Cir.1982). *See also United States v. Armedo–Sarmiento*, 545 F.2d 785, 794 (2d Cir.1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed. 2d 595 (1977); *Davis v. United States Attorney General*, 432 F.2d 777, 778 (5th Cir.1970). In the other cases, the defendant was still serving a valid state sentence, which remained unaffected by the vacated sentence or unlawful period in custody when he sought credit against his federal sentence. *See Scott v. United States*, 434 F.2d 11 (5th Cir.1970); *Emig v. Bell*, 456 F.Supp. 24, 26 (D.Conn.1978) (Newman, J.); *Mize v. United States*, 323 F.Supp. 792, 795 (N.D.Miss.1971). Only in *Green v. United States*, 334 F.2d 733, 736 (1st Cir.1964), *cert. denied*, 380 U.S. 980, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965), decided before *Gaines* and *Nelson*, was a defendant who had been prevented from serving a federal sentence on an offense preceding a state conviction

*solely* because of constitutionally invalid state incarceration denied credit.[2]

There is thus no precedential impediment to application of the *Gaines/Nelson* rationale to Pinaud. Rather, especially here, where Pinaud's state sentence was fully served before being vacated on Sixth Amendment grounds, crediting Pinaud for this "dead time" is the only result that would vindicate constitutional protections in a manner consistent with the *Gaines/Nelson* rationale of fundamental fairness. *See also Kincade v. Levi*, 442 F.Supp. 51, 54 (M.D.Pa.1977) (state statutory speedy trial provision violated, resulting in reversal of state conviction; indigent prisoner given federal credit for "dead time" in state custody). Such an interpretation would, incidentally, also be consistent with the current policy of conserving federal penal resources reflected in the new calculation provision:

3585. Calculation of a term of imprisonment.

. . . .

(b) Credit for prior custody.

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

. . . .

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2) (1982 & Supp. IV 1986) (in effect only as to crimes committed after November 1, 1987).

Under these circumstances, I would agree with the Solicitor General's view in *Gaines* and *Nelson* that " '[s]ection 3568 is . . . not so inflexible in its provisions as to be incompatible with an interpretation that

---

**2.** In both *Gaines* and *Nelson* the defendant had been *convicted* of the federal offenses before being sentenced in state court, a fact that distinguishes these cases from Pinaud's. However, the distinction does not seem significant where, as here, Pinaud *committed* one set of federal

offenses before the state crime and conviction. (This fact might, however, be relevant to a calculation of the amount of credit earned, as well as to which federal sentence the credit should be applied, matters with which this dissent need not deal.)

would give [Pinaud] the relief he seeks.' " Memorandum of the United States, *quoted in United States v. Sockel*, 368 F.Supp. 97, 101 (W.D.Mo.1973).