943 F.2d 1277
 William Joseph MEAGHER, Plaintiff-Appellant,
v.
John CLARK, Warden, Metropolitan Correctional Center, Miami,
Florida, The United States Parole Commission, Benjamin Baer,
Chairman, U.S. Parole Commission, and G. McKenzie Rast,
Parole Commissioner, U.S. Parole Commission, Southeast
Regional Office, Defendants-Appellees.
 No. 90-5483.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 4, 1991.
 
 1
 Marcia J. Silvers, Miami, Fla., for plaintiff-appellant.
 
 
 2
 Dexter W. Lehtinen, U.S. Atty., Guy Lewis, Linda Collins Hertz, Harriett R. Galvin, Miami, Fla., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before FAY and BIRCH, Circuit Judges, and HOFFMAN*, Senior District Judge.
 
 WALTER E. HOFFMAN, Senior District Judge:
 
 5
 This case, which has been referred to as "most unusual" and "extraordinary" by the district judge and magistrate below, involves a habeas corpus petition by a federal prisoner, who seeks to have his federal sentence modified to show credit for time served in state custody. The case calls for us to examine the relationship between federal and state criminal prosecution, confinement, and sentencing.
 
 FACTS AND PROCEDURAL HISTORY
 
 6
 In November 1975, William Meagher was convicted in federal court for unarmed robbery and was sentenced to 15 years imprisonment. He was paroled in November 1978 with 10 years, and one day, remaining on his federal sentence. While on release, he twice violated his parole: first, he was arrested and charged with battery of a police officer and then later, in Dade County, Florida, he was charged with three counts of armed robbery and kidnapping along with two counts of possession of a firearm during a felony.
 
 
 7
 In July 1979, after a hearing, Meagher was found incompetent to stand trial and was remanded to the health authorities. After intervening periods of competency, as well as a further state charge of aggravated battery in Broward County, Florida, Meagher was ultimately found competent by a state circuit court judge in April, 1982, to stand trial for the Dade County offenses.
 
 
 8
 Pursuant to plea negotiations with the state authorities, Meagher agreed to plead nolo contendere to one armed robbery charge. In exchange, the state agreed to dismiss the remainder of the Dade County charges and to nolle prosequi the battery of a police officer charges. The apparently unwritten plea agreement with the state, called for a twenty-year sentence which was to run concurrently with a state sentence already imposed in the Broward County case, along with any federal prison time he was to receive as a result of the parole violation. Despite an inadvertent remark by the sentencing judge that the sentence was to run consecutive to the federal parole violation,[1] Meagher was sentenced in accordance with the terms of his plea agreement. The judge's written judgment and commitment order specifically stated that Meagher's sentence was to run concurrently with any pending federal parole violations.
 
 
 9
 In January 1986, after a hearing, the United States Parole Commission revoked Meagher's parole and ordered that the unexpired 10-year portion of his earlier federal sentence was to commence only upon release from state custody. The notice of action by the parole commission provided:
 
 
 10
 "Revoke parole; None of the time spent on parole shall be credited. The unexpired portion of your federal sentence shall commence upon your release from state custody or upon federal reparole to your state sentence, whichever comes first."
 
 
 11
 After receipt of this notice in April 1986,[2] Meagher initiated the prerequisite state remedies in July of that year. After denial of same, he sought habeas relief on this issue in April 1987. This habeas proceeding alleged that his prior plea of nolo contendere was now involuntary, because the parole commission's action did not comport with the plea agreement to the effect that the state and federal sentences were to run concurrently. The habeas proceeding on this issue was denied at various points for technical difficulties, until it came before this court.
 
 
 12
 In Meagher v. Dugger, 861 F.2d 1242 (11th Cir.1988), this court disposed of the technical challenges to Meagher's instant habeas petition and, while not ruling on the merits, noted:
 
 
 13
 The terms of the plea agreement were that his twenty-year sentence was to run concurrently with both his [prior state sentence] and any pending case against him for violation of federal parole.
 
 
 14
 * * * * * *
 
 
 15
 This Court takes a dim view of prosecutors who fail to fulfill the terms of their plea agreements. Placing the burden of objection on the Petitioner's shoulders hints at best of the State's carelessness ... and at the worst evinces a disregard on the part of the State bordering on bad faith.
 
 
 16
 * * * * * *
 
 
 17
 Prejudice [to the petitioner] arises because he sacrificed his right to a trial in exchange for an allegedly illusory sentence. An allegation that the defendant would not have pleaded nolo contendere if he had known that the sentence would not run concurrent to the parole violation will support federal habeas relief.
 
 
 18
 Id. at 1246 & 1247.
 
 
 19
 On December 23, 1988, four days after this court's ruling and remand to the district court, Meagher was released from state custody after completion of his state sentence, and was transferred to federal custody to begin serving the remaining 10 years of his federal sentence.
 
 
 20
 Meanwhile, on remand, the district court noted that two remedies were available for the breach of the plea agreement: (1) withdrawal of the guilty plea, and (2) specific performance. Withdrawal was unavailable to appellant because he had been transferred from state to federal custody. Specific performance of the plea agreement, i.e., granting federal credit for the state-served time, thus effecting the promise for concurrency, was the plaintiff's only available remedy. 737 F.Supp. 641.
 
 
 21
 The district court ruled, however, that it was powerless to grant this relief as such relief would interfere with the mandate of the Parole Commission and violate the principles of dual sovereignty.
 
 DISCUSSION
 I.
 
 22
 Petitioner seeks credit on the federal sentence he has currently resumed serving, as a result of a federal parole violation, for time incarcerated under a now-voided, intervening state sentence. The basic factual, and some of the legal, underpinnings of this case are not disputed. As held by this court in Meagher v. Dugger, 861 F.2d 1242 (11th Cir.1988), petitioner has not received the major benefit of the plea bargain he struck with the state authorities--concurrency of his federal and state sentences. The district court below, on remand from that now-appealed decision, was correct in finding, as mentioned earlier, that ordinarily there are two remedies available for a government's breach of its plea agreement--withdrawal of the guilty plea and specific performance--and that the choice between the two is within the sound discretion of the court. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); United States v. Tobon-Hernandez, 845 F.2d 277, 280 (11th Cir.1988). The question this court must answer is whether such relief can be provided to the petitioner. Applying the principle of dual sovereignty to the instant facts, we must hold that it cannot be provided.
 
 
 23
 This court's predecessor, the former Fifth Circuit, applied the principle of dual sovereignty to bar similar relief in Scott v. United States, 434 F.2d 11 (5th Cir.1970).[3] In Scott, the court refused to grant a petitioner federal credit for time served under an invalid state sentence. In that case the Court of Appeals issued its ruling, per curiam, adopting the reasoning of the district court and attaching the lower court's findings as an appendix.
 
 
 24
 The facts of Scott were thus: the petitioner was serving time for state offenses when he received a federal sentence which was later held (this was an issue in Scott ) to be consecutive with his state time. The state convictions were subsequently set aside for failure to provide assistance of counsel and apparently were not retried. Scott then began service of his federal sentence and sought credit for the time served under the voided state sentences, claiming that, but for the state's action he would have spent such time in federal custody.
 
 
 25
 In denying the requested relief, the Scott court announced the rule for the predecessor to this circuit that a "defendant [is] not entitled to credit on federal sentence for time served on a state court sentence he was serving when convicted of the federal offense, though the state sentence was subsequently reversed." Though some facts are different, the principle of the Scott case applies to the instant case. There, as here, petitioner has alleged, at the state level, a constitutional deprivation--in that case, lack of counsel; in this case, a broken plea bargain. In Scott the service of the voided state time prevented the start of a federal sentence. Here, the state service precluded Meagher's resumption of his federal sentence after his parole was revoked.
 
 
 26
 In Saulsbury v. United States, 591 F.2d 1028 (5th Cir.), cert. denied, 444 U.S. 857, 100 S.Ct. 118, 62 L.Ed.2d 77 (1979) our predecessor court again refused to grant federal credit in a case closely analogous to this one. Saulsbury was convicted of state offenses while on federal parole. At the time of the plea bargain with the state he had received notice from the Parole Commission that his federal parole had been revoked, and that the state sentence imposed was to run concurrently with his federal sentence. However, because of continued miscommunication between the federal and state authorities Saulsbury was not tendered by the state, nor accepted by the federal authorities, though this had been the clear intention of the state sentencing judge. Saulsbury served the remainder of his federal sentence after completion of his state confinement.
 
 
 27
 Saulsbury turned upon dual sovereignty concerns, and the court in that case, in denying any federal credit, clearly sought to protect the independence of federal interests. Saulsbury held that "[u]nless the United States has somehow induced a state guilty plea by making a representation as to concurrency ..., a parole violator has no right to serve his sentences concurrently and may not protest when the federal government will not take him into custody until his intervening state sentence is served." Id. at 1036.
 
 
 28
 The Saulsbury case is factually similar to the current action. There, as here, the petitioner was a parole violator seeking credit on his remaining federal time for his state confinement for the substantive parole offenses. In each case the state plea bargain clearly called for concurrency, but delay, or even neglect by state authorities, resulted in the petitioner completing his state sentence before resuming his federal sentence.
 
 
 29
 We feel that the rule announced by the former Fifth Circuit in Scott and Saulsbury remains applicable precedent and governs this case as well. We find additional support in the ruling of the Second Circuit in Pinaud v. James, 851 F.2d 27 (2d Cir.1988), a case directly on point.
 
 
 30
 In Pinaud, the facts again closely match those currently at bar. Pinaud had accepted a state plea bargain which called for his state sentence to be served concurrently with an anticipated federal sentence. The expected federal proceedings were delayed, Pinaud was arrested on further state charges, and began serving his state sentence. Subsequently, a consecutive federal sentence was imposed. Finally, Pinaud's state convictions were vacated on appeal and he sought federal habeas relief to have the time he served in state confinement applied to his federal sentence, alleging that but for the state confinement he would have begun federal service.
 
 
 31
 The Second Circuit affirmed the district court's denial of federal credit for Pinaud's state confinement. The court rested its decision on "two intersecting principles". Id. at 30. The lead principle which the Second Circuit felt applicable was dual sovereignty, or the "undoubted power to impose a federal sentence that is not to commence until service of an existing state sentence for an unrelated offense has been completed."[4] Id. The Second Circuit then cited from an earlier precedent, United States v. Sackinger, 704 F.2d 29, 32 (2d Cir.1983), stating:"[U]nder the dual sovereignty principle [a defendant] could not, by agreement with state authorities, compel the federal government to grant a concurrent sentence." Where the federal officials are not parties to the state plea bargain, we "reject any implication that the federal court is obligated to comply with the terms of a plea agreement entered into between the defendant and state authorities."
 
 
 32
 Pinaud, 851 F.2d at 30.
 
 
 33
 The facts before the Second Circuit in Pinaud are analogous to our facts. There, as here, the petitioner was complaining of a state constitutional deprivation, a broken plea bargain. Parallel too, is the fact that the inaction of the state authorities, in not turning the defendant immediately over to federal custody, has precluded the bargained-for concurrency of sentences.
 
 
 34
 We have recently affirmed the importance of these tenets of dual sovereignty and of safeguarding the right of federal courts to impose concurrent punishments. In Hawley v. United States, 898 F.2d 1513, 1514 (11th Cir.1990), this court cited and followed Sackinger (relied upon above), and held that absent federal involvement in the state plea bargain, federal courts are "not bound by the state court's intentions and [are] free to use [their] own discretion in applying federal law to determine the conditions of the appellant's federal sentence." Id. This was also the law as clearly stated in the former Fifth Circuit. In Saulsbury v. United States, supra, this court announced the same proposition, barring interference with federal discretion in sentencing and incarceration, "unless the federal government has implicated itself directly or indirectly in a state plea bargaining process." Saulsbury, 591 F.2d at 1035.[5]
 
 
 35
 The above cases, and the principles they address, indicate that petitioner's requested relief must be denied.
 
 II.
 
 36
 Our reaffirmation of these precepts of dual sovereignty is buttressed by the importance of the federal concerns involved in this case. These interests include the interpretation of 18 U.S.C. § 3568 and the jurisdiction of the United States Parole Commission. The law is well-settled in both areas as to the significance of the federal interest involved.
 
 
 37
 Section 3568 governs the calculation of federal sentences imposed for crimes committed prior to November 1, 1987. The section provides, in pertinent part:
 
 
 38
 The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense of acts for which sentence was imposed....
 
 
 39
 * * * * * *
 
 
 40
 No sentence shall prescribe any other method of computing the term.
 
 
 41
 18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987 by Pub.L. No. 98-473, tit. II, §§ 212(a)(2), 98 Stat. 1987, 2031 (1984)).
 
 
 42
 This court, and others, have uniformly interpreted the language of Section 3568 and its predecessors as precluding the calculation of the time served on a federal charge from any date other than that on which the defendant was delivered to federal prison officials. In Scott v. United States, 434 F.2d 11 (5th Cir.1970), the predecessor to this court described the requirement of Section 3568 to be "clear and unequivocal" and further that "no judge or court may prescribe a different method." Id. at 21.
 
 
 43
 Our sister circuits have similarly ruled that section 3568 sets forth a required method of calculating federal sentences and have denied petitions for credit on this basis. See also Pinaud v. James, 851 F.2d 27, 30-31 (2d Cir.1988) (granting credit would ignore "mandatory provisions" of section 3568); Green v. United States, 334 F.2d 733, 736 (1st Cir.1964), cert. denied, 380 U.S. 980, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965) ("This statutory command is absolute and has been held to be so."); Hardy v. United States Board of Parole, 443 F.2d 402 (9th Cir.1971) ("It is fundamental that appellant's federal sentence did not begin to run until appellant, a parole violator, was returned to federal prison for the service of the balance of his sentence.").
 
 
 44
 Congress's clear intention, contained in the explicit language of section 3568, is that federal jail time be computed only to include such time that the prisoner has served in confinement for the federal offense involved. This court cannot avoid this well-settled requirement. Other courts have been similarly bound even, as here, where constitutional deprivations were alleged. See e.g., Pinaud, 851 F.2d at 30-31; Green, 334 F.2d at 736; Scott, 434 F.2d at 20-21.[6]
 
 
 45
 In addition to the clear requirements of Section 3568, this case also implicates the jurisdiction of the United States Parole Commission. Petitioner's request for a federal credit would, in effect, require this court to overturn the decision of the Parole Commission in this case. The Commission, after a hearing and deliberation, determined in revoking Meagher's federal parole that "[n]one of the time spent on parole shall be credited. The unexpired portion of [Meagher's] federal sentence shall commence upon [his] release from state custody...."
 
 
 46
 The power of the United States Parole Commission to make such parole decisions is well-settled and has been protected by the courts. This court's predecessor, in Saulsbury v. United States, 591 F.2d 1028 (5th Cir.1979), denied a petitioner's claim for federal credit, where the state sentence had called for concurrency and the Parole Commission had mandated a consecutive sentence. The Saulsbury court held:
 
 
 47
 The decision of whether a federal parole violator will actually serve a second sentence concurrently with the remainder of the sentence paroled is a matter exclusively within the province of the Parole Commission.... The second sentencing judge, state or federal, may not interfere with that discretion. The discretion is essential to the authority of the Parole Commission....
 
 
 48
 Id. at 1034 (footnote and citation omitted).
 
 
 49
 The Second Circuit has also protected the mandate of the Parole Commission in similar cases. In Heath v. United States Parole Com., 788 F.2d 85 (2d Cir.), cert. denied, 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986), that circuit held that the Commission's implementing statute gave broad and clear discretion in federal parole matters to the Commission. In that case the court stated that "the Commission was entitled to order that Heath's unexpired federal term run consecutively to his state sentence despite any intent on the part of the state court that Heath's state and federal sentences run concurrently.... The Commission is not obligated to follow the recommendations of the sentencing court." Id. at 92.
 
 
 50
 These principles in Heath were reaffirmed by the Second Circuit in D'Amato v. United States Parole Com., 837 F.2d 72 (2d Cir.1988). Citing Heath for its holding describing the broad statutory mandate of the Parole Commission, the D'Amato court held that the petitioner had failed to show that the challenged decision was beyond the Commission's statutory and regulatory authority. The D'Amato case also involved a petitioner seeking a federal credit for state prison time. Id. at 78-79.
 
 
 51
 Thus, it is settled that this court, and others, have indicated the importance of the federal interests involved in this case; those being the provisions of Section 3568 for calculating federal prison time and the broad discretion of the Parole Commission to decide matters of federal parole.
 
 CONCLUSION
 
 52
 We realize that this court, in its earlier opinion in this case, decried the state's apparent negligence in failing to ensure that Meagher received the benefit of his plea bargain. We also stated that a claim of the sort that petitioner currently has before us "will support federal habeas relief." Meagher v. Dugger, 861 F.2d 1242, 1246-1247 (11th Cir.1988). At that time the petitioner was still in state custody, and two proper remedies would have been to vacate his conviction or to require the state authorities to remand him to federal custody where he could resume his federal sentence immediately, and serve it concurrently with his state sentence.
 
 
 53
 Unfortunately, however, shortly after that opinion was handed down, plaintiff finished his state confinement and was then transferred to federal prison. The petitioner is thus before this court seeking federal credit for time served under a state sentence. This relief, unlike that of merely voiding the sentence, we cannot grant.
 
 
 54
 The principle of dual sovereignty, together with the importance of the independent federal powers to sentence, to calculate prison time and to make parole decisions in federal cases, requires that this court deny the requested federal credit. The decision of the district court, insofar as it denied such relief, though not with regard to its following of the dissent in Pinaud, is affirmed.
 
 
 55
 AFFIRMED.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 This matter was, in part, the subject of an earlier appeal of petitioner's case to this court. See Meagher v. Dugger, 861 F.2d 1242 (11th Cir.1988)
 
 
 [2]
 It is not clear from the record the reasons for the lengthy delays in the transmission of the parole revocation. The hearing was apparently held in July 1984, though the Parole Board's Notice was not dated until January 7, 1985. Such notice was not received by Meagher until April 3, 1986. In this Court's previous opinion we noted that this latter delay was apparently due to postal delay. See Meagher, supra, at 1244 n. 2. During these various periods of delay Meagher remained in state custody
 
 
 [3]
 In the case of Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) this court adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981
 
 
 [4]
 The second of the "two intersecting principles" was the application of 18 U.S.C. § 3568, with which we deal, infra
 
 
 [5]
 There have been no allegations whatsoever in this case of any federal involvement in the state plea bargain
 
 
 [6]
 This court is mindful, as was our predecessor court in Scott, that dissents in Pinaud and Green stand for the position that "[s]ection 3568 is ... not so inflexible in its provisions as to be incompatible with an interpretation that would give [a prisoner] the relief he seeks." Pinaud, 851 F.2d at 33-34 (Oakes, J., dissenting). We also note that the Ninth Circuit in Shabazz v. Carroll, 814 F.2d 1321 (9th Cir.1987), initially granted credit toward a petitioner's federal sentence for time spent in state custody. Shabazz's state sentence had called for a concurrent sentence but the state authorities failed to transfer him to federal prison. Subsequently, however, the Ninth Circuit, in response to a petition for rehearing, stated that it "lacks jurisdiction to grant such relief" and vacated its initial opinion. Shabazz v. Carroll, 833 F.2d 149 (9th Cir.1987), cert. denied, 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988). The per curiam ruling is without further explanation as to why the relief, which was originally granted, was now to be denied. Id