**UNITED STATES**

v.

**Larry Darnell MILLER, Defendant.**

**Criminal Action No. 2:93cr129.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 6, 1999.

Sherrie Scott Pauline Hardwick, United States Attorney's Office, Norfolk, VA, for U.S.

Martin A. Thomas, Decker, Cardon, Thomas, Weintraub, Coureas & Huffman, Norfolk, VA, George Andrew Neskis, Christie & Kantor, Virginia Beach, VA, for defendant.

## ORDER

DOUMAR, District Judge.

Presently before the Court is a Petition on Supervised Release filed by United States Probation Officer Charles E. Logan. In that petition, the Probation Officer outlines several violations of supervised release committed by Defendant, Larry Darnell Miller ("Miller"). After conducting a hearing on the matter and allowing the parties to file written briefs, the Court **FINDS** by a preponderance of the evidence that Miller violated the terms of his supervised released and is hereby **COMMITTED** to the United States Bureau of Prisons ("BOP") for a term of twenty-four (24) months.

## I. REVOCATION OF SUPERVISED RELEASE

### A. Violations of Supervised Release

Miller is on supervised release due to his conviction of Unauthorized Acquisition of Food Stamps in violation of 7 U.S.C. § 2024(b)(1). Miller had pled guilty to Count Four of a four-count indictment on January 3, 1994. On March 10, 1994, the Court sentenced Miller to eighteen (18) months imprisonment. Miller was released from custody on March 21, 1997 and began his three-year term of supervised release.

While on supervised release, Miller committed several violations of the terms of his supervision. The petition submitted by the United States Probation Officer indicated that Miller had failed to report to the probation office as directed, had failed to submit truthful monthly supervision reports, had failed to follow the instructions of the probation officer, had failed to answer truthfully the inquiries of the Probation Officer, had failed to notify the probation office within seventy-two hours that he had changed his employment, had used cocaine, and had committed felonies involving controlled substances. The most serious violations were the alleged controlled substance crimes. The Probation Officer stated that Miller had been arrested on November 28, 1998 by the Norfolk Police Department for Possession of 71.88 grams of crack cocaine and 151 grams of marijuana with Intent to Distribute. Miller was released by the state authorities on a $30,000 bond and has not yet been tried for these offenses.

### B. Legal Analysis

A controlled substance offense is a Grade A violation. U.S.S.G. § 7B1.1(a)(1). All of Miller's remaining alleged violations are Grade C. See id. According to the Guidelines, the Court "shall revoke" supervised release if it finds that a defendant committed a Grade A or B violation. U.S.S.G. § 7B1.3(a)(1). If the defendant

committed a Grade C violation, the Court may revoke, extend or modify the terms of supervised release. U.S.S.G. § 7B1.3(a)(2). The burden of proof that must be satisfied before the Court revokes supervised release is that the defendant committed the alleged violations by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3).

At the hearing on this matter, the Court heard testimony from Probation Officer Logan and found by a preponderance of the evidence that Miller had committed all of the alleged violations, both the Grade A controlled substance offenses and the remaining Grade C violations. Since Miller's criminal history category is V, the guideline range for his violations is 30 to 37 months imprisonment. *See* U.S.S.G. § 7B1.4(a). However, due to Miller's original federal offense, the statutory maximum that Miller can be sentenced to is twenty-four months. Accordingly, the Court sentences Miller to twenty-four months.

## II. CREDIT FOR TIME SERVED

Defense counsel argued at the revocation hearing that Miller had been imprisoned ten months and twenty days longer than he should have been and that he should be given credit for that time served on this sentence pursuant to 18 U.S.C. § 3585(b). The Government takes no position on whether or not Miller is entitled to credit for time served. Instead, the Government maintains that the decision of whether or not Miller should be awarded credit is a determination to be made by the Attorney General and BOP.

### A. Procedural and Factual Background

The following facts are extracted from a memorandum order denying a motion to dismiss Miller's habeas corpus petition.

*See Miller v. United States,* No. 3:95cv993 (E.D.Va. Oct. 25, 1995). Prior to Miller's release on March 21, 1997, Miller had not been incarcerated solely for his federal offense. Miller's relevant arrests and convictions begin on November 16, 1989, when he was sentenced to five years imprisonment by the Portsmouth Circuit Court for Possession of Cocaine. All but six months of that sentence were suspended.

As referenced above, Miller was arrested on federal charges of food stamp fraud on November 4, 1993 and released on bond. On December 7, 1993, while on his federal bond, Miller was arrested on unrelated state drugs and weapons charges and was not released on bond. On January 3, 1994, Miller pled guilty, while in temporary federal custody, to the federal food stamp fraud charges and then was returned to state custody.[1] On February 14, 1994, the Portsmouth Circuit Court issued an arrest warrant for Miller's violation of his 1989 suspended sentence and probation. On March 10, 1994, again in temporary federal custody, this Court sentenced Miller to eighteen months imprisonment. Miller was returned to state custody and a federal detainer was lodged for the March 1994 sentence. On June 8, 1994, the Norfolk Circuit Court sentenced Miller to one year imprisonment for the weapons charge that he had been arrested for on December 7, 1993. Given credit for time served, Miller was paroled from state custody for that offense on July 6, 1994. On September 20, 1994,[2] the Portsmouth Circuit Court sentenced Miller to a term of five years imprisonment for violating his suspended sentence and ordered that the sentence would run concurrently with the sentences previously imposed in Norfolk Circuit Court and the United States District Court. On October 5, 1994, Miller was released to federal custody pursuant

---

1. Miller was in temporary federal custody pursuant to a writ *ad prosequendum.*

2. It is unknown what sentence Miller was serving, if any, from July 6, 1994 until September 20, 1994.

to a writ *ad prosequendum*.[3] On November 8, 1994, Miller was transferred to the Petersburg Federal Correctional Institute and was assigned a federal inmate number. However, BOP determined that Virginia still had primary jurisdiction of Miller, and he was transferred back to the Virginia prison system on February 15, 1995. On March 15, 1995, a federal detainer was lodged at Miller's state institution. On June 3, 1996, Miller was paroled from state custody and began serving his federal sentence.[4] Miller remained in the custody of BOP until he was released on March 21, 1997.

In summary, Miller was in state custody from December 7, 1993 until July 6, 1994 (approximately seven months), from September 20, 1994 until October 5, 1994 (fifteen days), and from February 15, 1995 until June 3, 1996 (approximately sixteen months), for a total of approximately twenty-three and a half months. Miller was in federal custody from October 5, 1994 until February 15, 1995 (approximately four months) and from June 3, 1996 until March 21, 1997 (approximately nine and a half months), for a total of roughly thirteen and a half months.

Miller contended that his federal sentence should have commenced on October 5, 1994, the date that he was released into federal custody before being sent back to state custody, so his federal sentence of eighteen months would have been completed in April 1996. Accordingly, Miller filed a petition for a writ of habeas corpus in the Richmond Division of the Eastern District of Virginia. In an Order dated April 17, 1997, Judge Spencer relied upon the

representation of BOP and declared that Miller's federal sentence commenced *nunc pro tunc* as of December 1, 1995 and Miller was entitled to be released. *Miller v. Powell*, No. 3:95cv 993 (E.D.Va. Apr. 17, 1997) (order dismissing petition as moot). In this proceeding, Miller argues that his federal sentence should have expired on May 1, 1996 when he was paroled from state custody. Thus, he contends that his continued service until March 21, 1997 (ten months and twenty days) was time not credited to any sentence.

**B. Determination of Credit for Time Served**

■ Title 18, section 3585(b) of the United States Code provides:

Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the service was imposed.

18 U.S.C. § 3585(b). Calculations of credit for time served are performed by the Attorney General, not the sentencing judge.[5] *United States v. Wilson*, 503 U.S. 329, 334–35 112 S.Ct. 1351, 1354–55, 117 L.Ed.2d 593 (1992); *Barden v. Keohane*, 921 F.2d 476 (3rd Cir.1990). The Supreme Court reasoned that the Attorney General was responsible for such calculations prior to the Sentencing Reform Act and that

3. The Court could not determine why such a writ was ordered. Additionally, there was another unknown writ *ad prosequendum* issued on August 30, 1994.

4. Defendant indicates in his brief that he was paroled on May 1, 1996; whereas, Judge Spencer's memorandum order dated October 25, 1995 indicates that he was paroled on June 3, 1996.

5. Defendant cites to the Sixth Circuit decision of *United States v. Wilson*, 916 F.2d 1115 (6th

Cir.1990) for the proposition that the district court is responsible for the calculation of credit for time served. However, that decision was overruled by the Supreme Court in *United States v. Wilson*, 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), where the Court expressly held that the determination of sentencing credits is to be done by the Attorney General. *Id.* at 334–35, 112 S.Ct. at 1354–55.

there was nothing in the new law to change that procedure.[6] *Wilson,* 503 U.S. at 335, 112 S.Ct. at 1355. *See also United States v. Galicia–Delgado,* 130 F.3d 518, 522 (2nd Cir.1997) (holding that the Attorney General determines crediting for time served under 18 U.S.C. § 3585(b)); *United States v. Baxtron,* 106 F.3d 404 (table), No. 96–1757, 1997 WL 14150, *2 (7th Cir. Jan. 7, 1997) (same). Moreover, the Court reasoned that the provision typically refers to credit awarded for pretrial detention, which is not a determination made by the sentencing judge. *Wilson,* 503 U.S. at 335, 112 S.Ct. at 1355.

It appears that the position taken by the Government is correct; that is, the determination of whether Miller is entitled to credit for the time alleged served in excess of his sentences is done by the Attorney General. After the Attorney General makes a decision regarding any possible credit, the Court may review that decision if Miller files a petition for habeas corpus. The Court should not attempt to calculate the credit for any alleged time served at sentencing. Accordingly, the Court will not award Miller any credit for the time he contends he served in excess of his sentences at this juncture.

## C. Entitlement of Credit for Time Served

■ A separate question from who is responsible for calculating any credit for time served is whether or not Miller is entitled to any credit for the time he claims he served in excess of his sentences. Generally, a federal sentence does not commence until a prisoner is delivered to the federal institution designated by the BOP, *Doyle v. United States Dep't of Jus-*

*tice,* No. 95–CV–0051, 1995 WL 412406, *5 (E.D.Pa.1995), and the prisoner is not entitled to credit toward his sentence for time served in a state institution on an unrelated state charge. *Bloomgren v. Belaski,* 948 F.2d 688, 690 (10th Cir.1991). However, an exception exists:

> "if the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one." Thus if a federal detainer were lodged against a prisoner about to be released from state custody, any days that the state held him beyond what would otherwise have been his release date, to await the arrival of the federal marshal, would be time served "in connection with" his federal offense.

*Id.* (quoting *United States v. Winter,* 730 F.2d 825, 826–27 (1st Cir.1984)). *See also United States v. Smith,* 812 F.Supp. 368, 369 (E.D.N.Y.1993); *Doyle,* 1995 WL 412406, at *6.

The Sixth Circuit in *United States v. Croft* held that when a federal court orders a defendant to be confined immediately, the prisoner's federal sentence begins, even if the prisoner is not delivered to a federal institution. *Croft,* 450 F.2d 1094, 1098 (6th Cir.1971). The Fourth Circuit analyzed the decision in *Croft* when faced with different facts.[7] *Thomas v. Whalen,* 962 F.2d 358, 361–62 (4th Cir.1992). In *Thomas,* the defendant had been sentenced by a federal court to two terms of imprisonment for bank robbery, one for twenty years and one for twenty-five years, to be served concurrently. *Id.* at 359. Following the imposition of those

---

**6.** The predecessor to 18 U.S.C. § 3585 was 18 U.S.C. § 3568. The provisions are substantially the same and have been interpreted by courts in the same manner. *See Wilson,* 503 U.S. at 335, 112 S.Ct. at 1355 (discussing that the differences between the two provisions are that the word, "custody", was replaced with the phrase, "official detention", and that the provision was rephrased in the passive voice).

**7.** Despite the fact that both of these cases were decided before the passage of the Sentencing Reform Act, they are applicable to this situation, which is governed by the Sentencing Reform Act. *See Wilson,* 503 U.S. at 335, 112 S.Ct. at 1355.

sentences, a Pennsylvania state court sentenced the defendant to thirteen to twenty-six years for unrelated state charges, making no mention of the federal sentences. *Id.* at 359–60. The defendant served his state sentence first and then was released to the custody of BOP, who began calculating his sentences on that date, giving no credit for the time served in the state prison. *Id.* at 360. The Fourth Circuit found it significant that the state court had not ordered the sentences to be concurrent and that the United States Marshal was not directed to deliver the prisoner immediately into federal custody in holding that the defendant was not entitled to credit for the time served in the state institution.

The facts in this case are different from those in *Thomas.* Here, the state court clearly intended for the federal and state sentences to be served concurrently. Moreover, not only was Miller supposed to be remanded to federal custody, but at one point, he actually was incarcerated at a Federal Correctional Institute and was given a federal inmate number. This appears to be a situation more like that faced by the Sixth Circuit in Croft than the Fourth Circuit in *Thomas;* thus, warranting an award of credit for the time served.

However, in another case decided under the pre-Sentencing Reform Act provision, the Seventh Circuit held that a prisoner is not entitled to credit for the time served on state charges, even when the state court ordered that the federal and state sentences were to be served concurrently. *Jake v. Herschberger,* 173 F.3d 1061 (7th Cir. 1999). The defendant was sentenced to sixteen years by a federal court for his participation in a bank robbery. *Id.* Following the imposition of that sentence, the defendant pled guilty to state charges of kidnaping and rape and was sentenced to twenty years imprisonment to be served concurrently with the federal sentence. *Id.* Even though the state judge ordered

that the defendant should be delivered to the federal authorities to commence his sentence, due to a scrivener's error, the defendant was remanded to state custody. *Id.* The court found that the state court's order that the federal and state sentences were to be served concurrently did not bind the federal court, and the defendant was not given credit for time served in the state system.[8] *Id.* at 1065–66.

 The decision in *Jake* highlights the well-established principle that a state court cannot unilaterally impose a concurrent sentence between a federal and a state court. *Bloomgren,* 948 F.2d at 691; *Meagher v. Clark,* 943 F.2d 1277, 1282 (11th Cir.1991); *Goode v. McCune,* 543 F.2d 751, 753 (10th Cir.1976); *Jake,* 21 173 F.3d at 1065–66. "[A] determination as to concurrence of sentence made by one sovereign does not bind the other. A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, 'compel the federal government to grant a concurrent sentence.'" *Jake,* 173 F.3d 1059, 1065–66 (quoting *Pinaud v. James,* 851 F.2d 27, 30 (2nd Cir.1988)). "[A]bsent federal involvement in the state plea bargain, federal courts are 'not bound by the state court's intentions and are free to use their own discretion in applying federal law to determine the conditions of the appellant's federal sentence.'" *Meagher,* 943 F.2d at 1282 (quoting *Hawley v. United States,* 898 F.2d 1513, 1514 (11th Cir.1990)).

Consequently, the law is not settled as to whether Miller is entitled to credit for the time served in the state facility. Following the Sixth Circuit decision in *Croft,* Miller could be awarded credit for the time served. *Croft,* 450 F.2d at 1098. However, the doctrine of dual sovereigns supports the conclusion that a federal court

---

**8.** The Seventh Circuit remanded the case for a determination of whether the defendant was entitled to any credit for time served after a federal detainer was lodged and while he was awaiting transport into federal custody. *Jake,* 1999 WL 185063, at *8.

cannot be forced to accept a concurrent sentence imposed by a state court. *Bloomgren,* 948 F.2d at 691; *Meagher,* 943 F.2d at 1282; *Goode,* 543 F.2d at 753; *Jake,* 173 F.3d at 1065–66. Under that theory, Miller, would not be entitled to any credit for the time served in the state system.

It appears, based upon Judge Spencer's Order, that the Government agreed that Miller should be given credit for the time he had served in the state system. However, without explanation, Judge Spencer selected a date from which Miller's federal sentence should run. Defendant argues that the date selected was arbitrary and bears no significance. The date appears to have been selected as a practical solution to a difficult situation. However, the Order does not clarify precisely what time the court intended to credit toward Miller's sentence. Consequently, there is no clear law of the case upon which the Court may rely.

### D. Double Jeopardy

■ Defendant also argues that if he is not awarded credit for time served, his sentence would be increased in violation of the double jeopardy clause of the Fifth Amendment. Indeed, the double jeopardy clause prohibits a court from increasing a sentence after it is imposed. *United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931). However, that prohibition is against recalling a previously sentenced defendant to augment his sentence. *Id.; United States v. Lundien,* 769 F.2d 981, 984 (4th Cir.1985).

■ This is not a case where the Court is contemplating an increase to Miller's sentence. Defendant merely is arguing that he "expected" the federal and state sentences to run concurrently and since they were not administered in accordance with his expectations, he alleges he spent more time in prison than he expected. This is not a scenario that violates the double jeopardy clause. The doctrine of dual sovereigns, as discussed above, indicates that the unilateral decision of a state court to impose a concurrent sentence cannot force a federal court to impose a concurrent sentence. *See Bloomgren,* 948 F.2d at 691; *Meagher,* 943 F.2d at 1282; *Goode,* 543 F.2d at 753; *Jake,* 1999 WL 185063, at *5. Consequently, Miller may be required to serve the entire eighteen-month federal sentence without receiving any credit for time served for the state sentence. Moreover, such a decision would not violate the double jeopardy clause.

### E. Prohibition against Installment Sentences

Defendant also argues that the administration of his sentences violated the common law rule that a defendant may not be forced to serve his sentence in installments. *See White v. Pearlman,* 42 F.2d 788, 789 (10th Cir.1930). However, the holding in that case is limited to a situation where a prisoner has been mistakenly released early and the prison system then attempts to re-incarcerate the prisoner. *United States v. Martinez,* 837 F.2d 861, 865 (9th Cir.1988); *In re Garmon,* 572 F.2d 1373, 1376 (9th Cir.1978); *White,* 42 F.2d at 789. In those cases, the prisoner is entitled to credit for the time he was at liberty. *White,* 42 F.2d at 789.

■ In all other instances where a criminal sentence has been interrupted, a prisoner is not entitled to credit for the time of the interruptions. *See Zerbst v. Kidwell,* 304 U.S. 359, 361, 58 S.Ct. 878, 883, 82 L.Ed. 1399 (1938) (holding that an interruption of an original sentence for a sentence imposed for a federal crime committed while on parole is appropriate); *United States v. Carrow,* 947 F.2d 942, No. 91–7625 (table), 1991 WL 219434 (4th Cir. Oct.30, 1991) (same); *Matthews v. Meese,* 827 F.2d 313, 314–15 (8th Cir.1987) (allowing no credit for time a prisoner was released awaiting appeal of a Rule 35 order); *Garmon,* 572 F.2d at 1376 (allowing no credit for the interruption of a criminal

sentence for incarceration on civil contempt charges); *Cox v. United States,* 551 F.2d 1096, 1099 (7th Cir.1977) (allowing no credit when the service of a federal sentence was interrupted by a state criminal sentence); *Bailey v. Ciccone,* 420 F.Supp. 344, 348 (W.D.Mo.1976) (allowing no credit for time after release from state institution before re-incarceration on a federal sentence due to the failure to lodge a federal detainer); *United States v. Vann,* 207 F.Supp. 108, 111 (E.D.N.Y.1962) (same). Consequently, in this case, where Miller's federal sentence was interrupted to serve his state sentence, Miller is not entitled to credit for that interruption. *See Cox,* 551 F.2d at 1099.

### III. *CONCLUSION*

Based upon a preponderance of the evidence, the Court finds that Miller violated the terms of his supervised release and sentences Miller to twenty-four (24) months imprisonment. The Court recommends that Miller be incarcerated at a facility near his home in Norfolk, Virginia, due to the pending state charges against him.

It is not within the province of the Court at sentencing to determine whether Miller is entitled to credit for time served. Accordingly, Miller should address his request that he be given credit for time served to the Attorney General of the United States. Depending on the determination made by the Attorney General, Miller may seek judicial review of that decision through a petition for habeas corpus.

The Clerk is **DIRECTED** to send a copy of this Order to Defendant, the United Attorney, the United States Probation Office and the United States Bureau of Prisons.

**IT IS SO ORDERED.**