**Brett Marvin RANDALL, Petitioner–Appellant,**

v.

**Patrick WHELAN, Respondent–Appellee.**

No. 91–6039.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1991.

Decided July 12, 1991.

Stanley K. Joynes, III, argued, LeClair, Ryan, & Joynes, P.C., Richmond, Va., for petitioner-appellant.

Robert William Jaspen, Asst. U.S. Atty., Richmond, Va., (Henry E. Hudson, U.S. Atty., Richmond, Va., on brief), for respondent-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

WILKINSON, Circuit Judge:

Brett Marvin Randall, a federal inmate, asserts that he is entitled to credit against his prison sentence for time that he spent in a drug rehabilitation center prior to entering a federal penitentiary. He points to 18 U.S.C. § 3568, which governs calculation of terms of imprisonment, as the source of his claimed right. We conclude that Randall is not entitled to credit under that statute and therefore affirm the district court's judgment.

### I.

Randall was arrested on January 13, 1986 on the charge of robbing a bank in Baltimore, Maryland. At his bail hearing on January 15, Randall informed the court that he required treatment for a severe drug addiction. He requested that, pending trial, he be allowed to enter Second Genesis, an intensive residential rehabilitation and counseling center in Baltimore. Randall had applied for admission to the center a few weeks before his arrest. The court released Randall on a partially-secured bond and entered an order placing him in the custody of the Pretrial Services Agency. Under the terms of the order, Randall was confined to the premises of Second Genesis at all times except for required court appearances and meetings with counsel.

Randall entered into a plea agreement with the government and pled guilty on May 2 to one count of bank robbery in violation of 18 U.S.C. § 2113. Sentencing was deferred at the government's request in order to allow Randall to complete his obligations under the agreement. After a few months, Randall asked to be sentenced and a hearing was set for July 31. The district court imposed a twelve year sentence. At that time, Randall requested that the court delay the date on which he was to report to prison so that he could complete the program at Second Genesis. Although Randall initially sought a reporting date of January 1, 1987, the court set a date of October 1, 1986. By that time, the court reasoned, Randall would have completed further treatment at Second Genesis and would have had the opportunity to cooperate further with the government by testifying at a confederate's upcoming trial.

As ordered, Randall returned to Second Genesis and then reported to prison on October 1, 1986. A few years later, he sought credit towards service of his sentence pursuant to 18 U.S.C. § 3568 for the 257 days he resided at Second Genesis.

The Bureau of Prisons (BOP) denied his requests, citing its policy that time spent in a residential community center is not credited towards a term of imprisonment. Randall then filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Virginia. The district court dismissed the petition on the basis of this court's recent decision in *United States v. Insley,* 927 F.2d 185 (4th Cir.1991).

Randall now appeals.

## II.

At issue here is the interpretation of 18 U.S.C. § 3568. That section provides that the "Attorney General shall give any [person convicted of an offense] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Randall argues that he was clearly confined by judicial order to Second Genesis under restrictive conditions and was placed in the custody of the Pretrial Services Agency. He claims he is therefore entitled to credit toward his sentence under the plain language of the statute.

Despite Randall's protestations, we do not believe that "custody" as used in § 3568 has the meaning he would ascribe to it. The district court properly viewed our recent decision in *United States v.*

*Insley,* 927 F.2d 185 (4th Cir.1991) as directing dismissal of this claim. In *Insley,* the defendant had been released on appeal bond subject to certain conditions following her conviction on drug charges. In holding that she had not been "officially detained" under 18 U.S.C. § 3585(b),[1] we stated plainly that "[c]onditions of release are not custody." *Id.* at 186. We rejected Insley's efforts to establish a broad definition of "official detention" and declared that we did "not adopt the approach of those courts which have granted credit for time spent out of jail." *Id.* at 187. Here, Randall had not been incarcerated in jail but instead had been released on conditional bond into a residential treatment center. Our decision in *Insley* thus speaks directly to Randall's attempts to broaden the reach of § 3568. *See also United States v. Woods,* 888 F.2d 653, 655 (10th Cir.1989) (no credit against sentence for time spent in halfway house); *United States v. Smith,* 869 F.2d 835, 837 (5th Cir.1989) (same).[2]

Randall attempts to avoid *Insley* by arguing that the decision did not actually establish a bright line rule but rather turned on the relative lack of severity of the restrictions imposed on Insley. He asks this court to consider the regulations and physical constraints prescribed at Second Genesis as well as the conditions of the court's order and to conclude that they

**1.** Section 3568 applies to offenses committed before November 1, 1987. Section 3585 is the successor statute. The new provision refers to "official detention" rather than to "custody," but as we noted in *Insley,* nothing in its legislative history indicates a departure from the precedent decided under Section 3568. 927 F.2d at 186.

**2.** Another paragraph of § 3568 provides credit to a convicted person for time spent "committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served."

We cannot agree with the dissent that this provision covers Randall's situation. In the first place, our review of the record reveals that it was Randall who initiated the request following sentencing for continued placement at Second Genesis, and his asserted reason was to complete his treatment. The government stood silent on the point and it was Randall who used the upcoming trial to argue for a delayed turn-in date. Second, Randall's situation is no different from that of the defendant in *Insley,* who had been sentenced and then conditionally released on bond pending appeal, and who re-

ceived no credit for time spent before reporting to prison. Third, Randall was released pursuant to 18 U.S.C. § 3143(a) as someone "waiting imposition or *execution* of sentence." (emphasis added). It was the court, and not the Attorney General, that set Randall's conditions of release. The court made clear at the sentencing hearing that Randall was to remain at Second Genesis under the authority of the court until he entered "into federal custody on October 1st." Failure to comply with the order would have resulted in a contempt of court citation or a forfeiture of bond.

Finally, we believe the paradigm situation to which the "awaiting transportation" language of § 3568 applies is that of someone who reports to the United States Marshal at a specified date and is then temporarily held awaiting permanent placement within the federal prison system. In all events, it is difficult to stretch the statutory term "awaiting transportation" to encompass a period of two months spent in a drug treatment center at Randall's own request.

were sufficiently restrictive to justify an award of credit toward his sentence. To bolster his assertions, Randall points to a Program Statement promulgated by the Bureau of Prisons (BOP), which he claims identifies the degree of restraint as the critical factor in determining credit due under 18 U.S.C. § 3568.

Randall's arguments are unavailing, however. We have already discussed the decision in *Insley*. Nor does Randall gain any support from the BOP, which relied upon its established policy in denying Randall credit for his time at Second Genesis. BOP Program Statement 5880.24(5) defines "in custody" for purposes of awarding credit towards a sentence as "physical incarceration in a jail-type institution or facility." (emphasis omitted). The BOP Statement also directly addresses Randall's circumstances:

> Time spent in residence in a residential community center ... as a condition of bail or bond, including the "Pretrial Services" program (18 USC 3152–3154), is not creditable as jail time since the degree of restraint provided by residence in a community center is not sufficient restraint to constitute custody within the meaning or intent of 18 USC 3568.

*Id.* at (5)(b)(5) (emphasis omitted). This particular policy statement represents "a reasonable opinion by officials having greater knowledge of federal penal policy than we judges have, so we are inclined to defer to it." *Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir.1989) (denying credit for time spent in halfway house).[3]

Randall nevertheless contends that the "degree of restraint" to which he was subjected at his residential center was sufficient to constitute "custody." His argument reveals a misunderstanding of the relevant terms. There exists a strong presumption that "custody" refers to the legal authority of the custodian rather than to

actual housing conditions. The physical conditions to which federal inmates are subjected vary widely, from maximum security prisons and isolation cells to work release programs. The only common link among all those settings is that the inmates are always subject to the authority of the Attorney General. That single factor encompasses a wide variety of restrictions. For example, federal inmates are governed by the BOP's disciplinary procedures, their site and conditions of incarceration can be changed at the discretion of the Attorney General, they are subject to immediate arrest and return as well as prosecution under 18 U.S.C. § 751(a) if they escape their place of confinement, and they can be restrained by potentially lethal force.

By contrast, release on bond includes none of these restrictions. Randall was placed in Second Genesis by order of the court and was answerable to the court rather than to the Attorney General. Had Randall violated the conditions of his release, he would not have been subject to immediate arrest; the government would have had to move for revocation of the order of release and for issuance of an arrest warrant. *See* 18 U.S.C. § 3148(b). The staff at Second Genesis had no legal authority to prevent Randall from leaving and certainly could pose no threat of lethal force to prevent him from doing so. Significant differences in restraints thus pertain, depending upon the authority of the custodian. *See Moreland v. United States*, 932 F.2d 690, 695 (8th Cir.1991) (Magill, J., dissenting). Randall would have us ignore the fact that he is seeking credit for time that he did not spend in the custody of the Attorney General.

Additionally, Randall's proposed interpretation of custody would mire the judiciary in a swamp of factual and circumstantial details that would likely produce inconsistent and standardless decisions. The pro-

---

**3.** Randall also argues that denial of credit for time spent in residential centers will discourage those in his situation from seeking treatment for their addictions. The government counters that if Randall's position were adopted then rehabilitation programs would become havens for those seeking credit on their sentences rather than resources for those undertaking a genuine effort at self-betterment. Where the com-

peting policies touch so profoundly upon the nature and purposes of sentencing, we think they are not for the judiciary in the first instance to resolve. The Attorney General, acting through the Bureau of Prisons, has advanced a view consistent with the statute to which deference is warranted in the absence of any clear expression from Congress. *See Ramsey*, 878 F.2d at 996.

grams and rules of residential treatment centers vary dramatically with each institution. Every prisoner who had spent time in such a center would argue that his particular release restrictions rose to a level requiring credit towards his sentence. Courts are ill-suited to compare the myriad combinations of restrictions and fashion a coherent scheme of awarding credit. No obvious rule informs us how to weight a midnight curfew against one beginning at eight in the evening, or a five-day-a-week regime against one lasting seven days. Such policy judgments are better left to the Bureau of Prisons and the Attorney General. So long as their judgments comport with the relevant statutes, we are constrained to uphold them.

Randall should not be heard to complain that this result is unfair. The BOP's policy was longstanding and should have placed him on notice that credit would not be granted for time spent outside jail. The sentencing court also provided notice by informing Randall, "I am putting you out into Second Genesis until you surrender *into federal custody* on October First." (emphasis added). Also, Randall had already applied for admission to Second Genesis before he committed the crime for which he was arrested. The court allowed him to continue with his plans and to receive the benefit of treatment, all at Randall's own request. Moreover, Second Genesis does not allow any of its residents to leave the house during the first four to six months of treatment unless they are accompanied by an authorized person. Thus the conditions by which Randall abided were only marginally more restrictive than those applied to the other residents. Under such circumstances, Randall's arguments that he is entitled to credit under 18 U.S.C. § 3568 are even less persuasive.

### III.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.

BUTZNER, Senior Circuit Judge, concurring and dissenting:

I concur in the denial of credit for Randall's stay at Second Genesis from his arrest on January 15, 1986, to his sentencing on July 31, 1986. I agree that *United States v. Insley,* 927 F.2d 185 (4th Cir. 1991), governs this aspect of Randall's claim. *Insley* is consistent with our precedents. In a variety of situations—release on bail, probation, and parole—we have denied credit for "street time" when the defendant was not incarcerated in a penal institution. *See, e.g., Hall v. Bostic,* 529 F.2d 990 (4th Cir.1975).

I dissent from the court's conclusion that Randall's sentence did not commence to run on July 31, 1986, when he was sentenced. By implication the court—erroneously, I believe—holds that his sentence began to run on October 1, 1986.

On July 31, 1986, the district court convened a hearing to consider Randall's request that he be sentenced on his plea of guilty, which he had entered the previous May. Again, the government opposed sentencing and sought another continuance until after Randall testified in a codefendant's trial, which had been rescheduled from July to the middle of September. The court denied the government's motion for a continuance and sentenced Randall to 12 years in prison. The question then arose about what to do with him pending his appearance as a witness. His attorney urged the court to accept a government suggestion that he remain at Second Genesis until January 1, 1987, to complete his therapy. The court declined, and this colloquy followed:

[Defense Attorney]: My suggestion, then, Your Honor, is perhaps October 1st. There are two reasons for that, I suggest. First, it is a little more time. Also, I think it's important where Mr. Randall is incarcerated. If he is incarcerated in two weeks, say, in Lexington, then [the prosecutor] will bring him back to this area for his testimony, and then he will spend two or three or four weeks in the Baltimore City Jail. I don't think that that is going to do him any good. If the Court can give him until October 1st, then he can come from the program to testify at the trial.

[The Court]: I am not willing to do that. That will permit him to be in Sec-

ond Genesis at the time of the trial in September.

[Prosecutor]: Right.

\* \* \* \* \* \*

[The Court]: I will set a turn-in date of Wednesday, October 1st, at 10:00 a.m. The condition of this is that he remain in Second Genesis during this interim period, in that program.

Mr. Randall, as you heard us saying before, although we were not talking directly to you, I am putting you out into Second Genesis until you surrender into federal custody on October 1st. During that time, if you should disappear from the Second Genesis program or fail to appear as required on October 1st, Mr. Randall, the law calls for me to impose a fine of up to $25,000 or imprisonment of not more than ten years or both.

This arrangement met the government's requirement to have him available as a witness, and it enabled Randall to continue his therapy. The colloquy between the court and counsel illuminates the court's reasoning, but it is the court's orders we review—not the colloquy—to ascertain Randall's status as a convicted person.

Randall's status is clearly set forth in two orders that the district court entered on July 31, 1986. The first order states that Randall "is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of twelve (12) years." Also, in this order, the court recommended "that the place of confinement be one that will treat his drug problem." This recommendation is consistent with the court's decision to commit Randall to Second Genesis as a place of detention rather than jail. The court did not rescind this commitment to the Attorney General, nor did it stay the execution of sentence.

The second order entered on July 31, 1986, implemented the first. It ordered Randall to surrender at his expense at a prison to be designated in writing by the United States Marshal on the date given in the notice. If the marshal gave no notice, Randall was directed to surrender at the marshal's office in the United States Court-house, Baltimore, on October 1, 1986. In the meantime, Randall was detained at Second Genesis 24 hours a day awaiting his appearance as a witness and instructions from the marshal about transportation to prison.

The question in this aspect of the case is when did Randall's sentence commence to run? I believe the answer to this question is found in the second paragraph of 18 U.S.C. § 3568, which provides:

If any [person convicted of an offense] shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

It is quite evident that Randall satisfies all the requirements of this statutory provision. He was a person convicted of an offense. He was subject to directions from the United States Marshal about transportation to prison. Pending these directions he was confined 24 hours a day at Second Genesis. Second Genesis is not a jail, but it is an "other place of detention."

The district court stated that were it not for *United States v. Insley*, 927 F.2d 185 (4th Cir.1991), it would grant relief. It construed *Insley* as drawing a bright line denying credit unless the defendant is confined in jail. But this gloss on *Insley* is inapplicable with respect to Randall's status after sentencing. *Insley* construed 18 U.S.C. § 3585(b), a statute that does not have a counterpart to the second paragraph of § 3568 dealing with commitment to a "jail or other place of detention" pending transportation to prison. The defendant in *Insley* was free on bond with relatively slight restrictions. She was not confined 24 hours a day at a "place of detention." *Insley* furnishes no precedent for determining when Randall's sentence began to run while he awaited transportation.

I cannot accept the notion that Randall should be deprived of the provisions of the second paragraph of § 3568 because he, as well as the court and government, believed Second Genesis was the preferred place of detention pending his appearance as a witness and transportation to prison. The

statute contains no such exception. The statute speaks in unequivocal terms, and our court has no mandate to engraft an exception to a provision that Congress has enacted to define the commencement of a sentence of imprisonment.

Sixty days elapsed from the date Randall was received at Second Genesis after sentencing on July 31, 1986, until his departure on September 29 to travel, at his parents' expense, to the Ashland Correctional Institution where he surrendered on October 1, 1986, in accordance with the directions he received from the United States Marshal. Prison officials certified to the district court that Randall is projected for release on September 27, 1991. Dissenting, I would hold that Randall's projected release date should be advanced 60 days to July 29, 1991.