**Lewis THOMAS, Petitioner–Appellee,**

v.

**Patrick WHALEN, Respondent–Appellant.**

**No. 91–7710.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1992.

Decided May 1, 1992.

Carolyn A. Sabol, Regional Counsel, Bureau of Prisons, Annapolis Junction, Md., argued (Richard Cullen, U.S. Atty., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., on brief), for respondent-appellant.

Michael S. Lieberman, DiMuro, Ginsberg & Lieberman, P.C., Alexandria, Va., argued (Bernard J. DiMuro, Elizabeth K. Lynch, on brief), for petitioner-appellee.

Before HALL and LUTTIG, Circuit Judges, and BLATT, Senior United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellant, warden of the federal penitentiary in Petersburg, Virginia, challenges a district court order granting appellee's petition for a writ of habeas corpus. The district court granted the writ based upon its determination that appellee was entitled to fifteen years of credit against his federal sentences for time served in state confinement on unrelated state offenses. We conclude, pursuant to 18 U.S.C. § 3568, that appellee's federal sentences did not commence until he was received at the federal penitentiary for service of those sentences and that appellee was not entitled to receive credit against his federal sentences for the time he served in state confinement. We therefore reverse the district court's order granting appellee's writ of habeas corpus.

### I.

Petitioner-appellee Lewis Thomas was arrested on March 31, 1970, on federal bank robbery charges and released on bond the same day. See J.A. at 52, 94, 99. While free on federal bond, he was arrested by Pennsylvania law enforcement officials on unrelated state charges, taken into state custody, and held in Holmsburg County Jail after initial confinement at the Philadelphia Detention Center. See id. at 52, 95, 99, 100. Federal officials subsequently filed a detainer with Pennsylvania state authorities to secure Thomas' presence in federal district court for his trial on the federal bank robbery charges. Thomas was convicted of bank robbery in November 1970. Following his conviction, he was returned to state authorities.

Thomas was removed to federal court on April 23, 1971, for sentencing. He was sentenced by the district court to twenty years' imprisonment, see id. at 47, and again returned to state authorities.

In September 1971, Thomas was again taken to federal court for trial on charges of savings & loan association robbery. Following a two-day trial, Thomas was convicted also of this federal offense and then returned to state authorities. On October 19, 1971, the federal district court sentenced Thomas to twenty-five years' imprisonment. See id. at 48. The judgment and commitment order directed this sentence to run concurrently with the previously imposed federal sentence for bank robbery. The order made no reference to any state sentence. See id. Thomas remained in state prison following this sentencing.

On November 13, 1971, Thomas was convicted on the unrelated state charges for which he had been arrested on October 17,

1970: operating a motor vehicle without the owner's consent, carrying an unlicensed firearm, playfully and wantonly pointing a firearm, assault and battery, aggravated assault and battery, and assault and battery with intent to murder. *See id.* at 12–35, 99–100. On January 23, 1972, a Pennsylvania court sentenced Thomas to serve thirteen to twenty-six years at Graterford State Penitentiary for these state-law offenses. *See id.* at 8, 100. The court determined that Thomas had been in continuous state custody since October 18, 1970, and therefore ordered that the state sentence be computed from that date. *See id.* at 32. The state court made no reference to Thomas' federal sentences. *See id.* at 12–35.

Thomas remained in state custody until his release on September 24, 1986. Upon his release, Thomas was taken into custody by the United States Marshal so that he could begin service of his federal sentences. *See id.* at 11, 101. The Federal Bureau of Prisons calculated his federal sentence from this date, on the authority of 18 U.S.C. § 3568. *See J.A.* at 50. So calculated, Thomas' sentence would expire on September 23, 2011. *See id.*

Thomas sought to credit his time in state custody against his federal sentences. After exhausting administrative remedies, he petitioned the United States District Court for the Eastern District of Virginia for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The district court granted the writ on the reasoning of *United States v. Croft*, 450 F.2d 1094 (6th Cir.1971).[1] *See* discussion *infra.* The district court ordered that Thomas be credited with fifteen years toward his federal sentences for his time served in state prison for his state offenses. *Thomas v. Whalen,* Civ. Action No. 91–0174–AM (E.D.Va. Aug. 19, 1991). With this credit, Thomas was entitled to immediate release.

The district court granted respondent Whalen's motion to stay judgment *nunc pro tunc* pending consideration of his motion to alter or amend judgment, *see* J.A. at 107, but it later held that it lacked jurisdiction to rule on that motion. The court did, however, stay its order granting Thomas a writ of habeas corpus pending appeal. *See id.* at 108. This appeal followed.

## II.

Title 18, section 3568 of the United States Code directs that the sentence of a person convicted of a federal offense "shall commence to run from the date on which such person is *received* at the penitentiary, reformatory, or jail for service of such sentence" and that "[n]o sentence shall prescribe any other method of computing the term."[2] Under the unambiguous terms of section 3568, Thomas' concurrent federal sentences for bank and savings & loan association robbery commenced on September 24, 1986, the date on which he was received at the Federal Correctional Institution to begin service of those sentences. Thomas does not argue that the statute can be read otherwise. *See* Appellee's Br. at 15, 21.

■ Nor does Thomas argue that he was in federal custody while in state prison as a result of the federal detainer, and therefore entitled to credit by virtue of the requirement in the second sentence of section 3568 that the Attorney General credit a federal prisoner for "days spent in custody in connection with the offense or acts for which [his] sentence was imposed." A detainer neither effects a transfer of a prisoner from state to federal custody nor transforms state custody into federal custody by operation of law. "Unlike a writ of habeas corpus *ad prosequendum* issued by a federal district court. . . . a detainer

---

**1.** The court also relied on *Shabazz v. Carroll,* 814 F.2d 1321 (9th Cir.1987). *Shabazz,* however, was later vacated by the Ninth Circuit for lack of jurisdiction. *See Shabazz v. Carroll,* 833 F.2d 149 (9th Cir.1987), *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988).

**2.** 18 U.S.C. § 3568 (1982) (emphasis added), *repealed,* Pub.L. No. 98–473, title II, §§ 212(a)(2), 235(a)(1), 98 Stat.1987, 2001, 2031 (Oct. 12, 1984), *reenacted in part,* 18 U.S.C. § 3585 (1988). Although section 3568 has been repealed, it applies to offenses committed before November 1, 1987. *See Randall v. Whelan,* 938 F.2d 522, 524 n. 1 (4th Cir.1991).

merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison." *United States v. Mauro,* 436 U.S. 340, 358, 98 S.Ct. 1834, 1845, 56 L.Ed.2d 329 (1978) (footnote omitted); *accord United States v. Bamman,* 737 F.2d 413, 415 (4th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *see also* H.R.Rep. No. 1018, S.Rep. No. 1356, 91st Cong., 2d Sess. 3 (1970) ("A detainer is a notification filed with the institution in which a prisoner is serving a sentence advising that he is wanted to face pending criminal charges in another jurisdiction."), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4864, 4865.[3]

█ Thomas instead rests his argument that he is entitled to credit for time served in state prison exclusively on the decision in *United States v. Croft,* 450 F.2d 1094 (6th Cir.1971). In *Croft,* the Sixth Circuit held that where a federal court orders a prisoner's immediate commitment to federal prison, the prisoner's federal sentence commences for purposes of section 3568 upon issuance of that order, even if the prisoner is not then delivered to federal prison. The sequence of events in *Croft* was indeed similar to the sequence of events in this case. There, the prisoner was arrested by federal authorities for a

federal offense and freed on bond. While out on bond, he was arrested on an unrelated state charge and taken into state custody. The prisoner appeared in federal court pursuant to a writ of habeas corpus *ad prosequendum,* and was convicted and sentenced for the federal offense. After sentencing, the court ordered that the United States Marshal immediately deliver the prisoner to federal prison. The prisoner instead was returned to state custody. Thereafter, the prisoner was convicted for his state offense, and the state court imposed a sentence to run concurrently with his federal sentence. Upon the conclusion of the state proceedings, the United States Marshal again did not deliver the prisoner to the federal penitentiary pursuant to the district court's earlier order. Instead, a sheriff delivered the prisoner to the state penitentiary.

The Sixth Circuit held that Croft was "entitled to credit on his federal sentence for the time he was held in the county jail after the federal court's order of commitment." *Id.* at 1099.[4] It reasoned that Croft's federal sentence began to run "from the date of the order of commitment to the Marshal" and that "the failure of the Marshal to execute" the prisoner's federal commitment order "at the time of its issuance, or after the [prisoner] had subsequently been sentenced on state charges"

---

**3.** A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely "on loan" to federal authorities. *See Thomas v. Brewer,* 923 F.2d 1361, 1367 (9th Cir.1991); *Flick v. Blevins,* 887 F.2d 778, 782 (7th Cir.1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990); *Hernandez v. United States Attorney Gen.,* 689 F.2d 915, 918–19 (10th Cir.1982); *Roche v. Sizer,* 675 F.2d 507, 510 (2d Cir.1982); *Crawford v. Jackson,* 589 F.2d 693, 695 (D.C.Cir.1978), *cert. denied,* 441 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *McIntyre v. United States,* 508 F.2d 403, 404 (8th Cir.), *cert. denied,* 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 673 (1975); *Vignera v. Attorney Gen. of the United States,* 455 F.2d 637, 637–38 (5th Cir.1972); *see also United States v. Insley,* 927 F.2d 185, 186–87 (4th Cir.1991) (holding that "official detention" in 18 U.S.C. § 3585—the successor statute to section 3568—means "physical incarceration"); *Randall,* 938 F.2d at 524 (holding, in reliance on *Insley,* that time spent in a

drug rehabilitation center is not "custody" for purposes of section 3568).

It is presumably because the law is so well settled in this respect that Thomas also does not argue that he is entitled to credit for the days when he appeared in federal court for trial and sentencing. *See* Appellee's Br. at 21.

**4.** *See also Smith v. Swope,* 91 F.2d 260, 261–62 (9th Cir.1937) (holding that "[w]hen a defendant is sentenced to prison and the marshal having him in custody is ordered to deliver him to the prison 'forthwith' and fails to do so until ... years later," the sentence will be "deemed to begin at the time of his sentence and the commitment and custody thereunder by the marshal" rather than "the date of the tardy actual commitment to prison"); *In re Jennings,* 118 F. 479, 482 (C.C.E.D.Mo.1902) ("[N]o ministerial officer, by disobeying the mandate of the court, and unlawfully surrendering him into another custody than that where he rightfully belonged, could suspend the running of the sentence for that offense.").

did not postpone the beginning of the sentence. *Id.* at 1098; *accord Kiendra v. Hadden,* 763 F.2d 69, 73 (2d Cir.1985); *Gillman v. Saxby,* 392 F.Supp. 1070, 1072 (D.Haw.1975). The Sixth Circuit subsequently limited *Croft* to the circumstance in which a state court orders its sentence to run concurrently with a federal sentence. *See Vaughn v. United States,* 548 F.2d 631, 633 (6th Cir.1977); *see also Youngsworth v. United States Parole Comm'n,* 728 F.Supp. 384, 389 (W.D.N.C.1990); *cf. Kiendra,* 763 F.2d at 73 (applying *Croft* where a state court intended its sentence to run concurrently with a federal sentence).[5]

Neither the federal nor the state court in this case ordered its sentence to run concurrently with the other court's sentence. Thomas, however, argues that his state sentence is deemed to run concurrently with his federal sentence under state law. *See* Pa.R.Crim.P. 1406(a) ("Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently unless the judge states otherwise."). Even if we assume that this is true,[6] *Croft* is still distinguishable from this case on the fact that was dispositive in that case—the effect of the order of judgment and commitment.

**5.** *See* note 7 *infra.*

**6.** It is doubtful that Rule 1406(a) was intended to apply where the two sentences in question have been imposed by different sovereigns. "[W]here different courts have sentenced [a person] for different offenses to be served at separate and distinct institutions," Pennsylvania courts presume "that the sentences are to run consecutively," and Rule 1406(a) does not apply. *Commonwealth v. Pfeiffer,* 396 Pa.Super. 641, 646, 579 A.2d 897, 900 (1990); *see also Gomori v. Arnold,* 533 F.2d 871, 875 (3d Cir.) (holding that the "rule of presumptive concurrency of sentences, in the absence of a specific directive that sentences be served consecutively, does not apply where one sentence is imposed by a federal court and the other by a state court"), *cert. denied,* 429 U.S. 851, 97 S.Ct. 140, 50 L.Ed.2d 125 (1976).

In any event, contrary to the suggestion of the concurrence, a federal sentencing court has no

The court in *Croft* never quoted or described the commitment order on which that case turned. It interpreted the order, however, to require the United States Marshal to commit Croft to federal prison *immediately.* *See* 450 F.2d at 1095 (stating that the prisoner was "immediately committed to imprisonment" by the district court); *see also id.* at 1097–99 (reasoning that *Smith v. Swope,* 91 F.2d 260 (9th Cir.1937), "embodies the rule determinative of this case" because the commitment order in *Smith* also required the Marshal to deliver the prisoner to prison "forthwith"). Unlike the order in *Croft,* and contrary to the conclusion of the district court below, *see* J.A. at 100 (describing the judgment and commitment order as "sentenc[ing] petitioner to twenty years' imprisonment and order[ing] his commitment to begin that day"), Thomas' preprinted commitment order did not even arguably require the United States Marshal to deliver Thomas to federal prison immediately. The sentencing court ordered that Thomas "is hereby committed *to the custody of the Attorney General* or his authorized representative *for imprisonment." Id.* at 47, 48 (emphases added). The order, thus, immediately committed Thomas to the custody of the Attorney General for the purpose of imprisonment, but it did not purport to commit him immediately to prison. *Cf. Causey v. Civiletti,* 621 F.2d 691, 694–95 (5th Cir. 1980).[7]

obligation to implement or otherwise to respect a state court's order that state and federal sentences run concurrently. *See, e.g., Meagher v. Clark,* 943 F.2d 1277, 1281–82 (11th Cir.1991); *Pinaud v. James,* 851 F.2d 27, 30 (2d Cir.1988); *Opela v. United States,* 415 F.2d 231, 232 (5th Cir.1972); *cf.* note 8 *infra.*

**7.** There is an additional factual difference between this case and *Croft.* Primary jurisdiction rested with the federal court in *Croft, see* 450 F.2d at 1099, whereas in this case, even if the United States obtained primary jurisdiction over Thomas as the first arresting sovereign, it yielded that superior jurisdictional right when it permitted Thomas to be incarcerated in state prison without a challenge to the state's jurisdiction. *See Roche,* 675 F.2d at 510.

We do not rest our distinction of *Croft,* however, on the presence in that case of primary federal jurisdiction or of an order of concurrent service of sentences, because in our view neither fact was determinative of (if even relevant

The order in this case is, in substance, identical to that in *Larios v. Madigan,* 299 F.2d 98 (9th Cir.1962), a case cited by neither Thomas nor the government. In *Larios,* the district court's commitment order read as follows: "It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of two years." *Id.* at 99 n. 1. Following the entry of this order, the Deputy United States Marshal returned the prisoner to state authorities. On appeal, the prisoner argued that the district court's order required that he be delivered immediately into federal prison and that, as a consequence, his federal sentence commenced under 18 U.S.C. § 3568 when he was received at the local prison following his federal sentencing. The Ninth Circuit rejected this argument, holding that the prisoner's federal sentence commenced, at the earliest, when he was finally released by state authorities and physically delivered to federal officials to await transportation to the federal facility where he was to serve his federal sentence. 299 F.2d at 99–100 (following *Gunton v. Squier,* 185 F.2d 470 (9th Cir.1950)); *accord Thomas v. Brewer,* 923 F.2d 1361, 1367 (9th Cir.1991).

Even if we agreed with Thomas that the commitment order in this case is indistinguishable from that in *Croft,* we would not follow *Croft. Croft* may be understood as either an application of section 3568 or an equitable departure from the statute. Under either interpretation, it is indefensible. If the opinion is viewed as an application of section 3568, then the court erroneously permitted "constructive" receipt at the federal penitentiary to satisfy the statute's plain requirement of actual receipt.[8]

If *Croft* is instead considered an equitable departure from the statute, as Thomas' counsel contended at oral argument, *see also Causey,* 621 F.2d at 694 (describing *Croft* as effecting an "equitable modification" of section 3568), then it is contrary to even the most elementary principles of equity. A federal court, whether in law or in equity, has no authority to depart from the clear command of a statute in order to effect a result that it believes to be (or even one that would in fact be) dictated by general principles of fairness. The Supreme Court has stated:

> Courts of equity can no more disregard statutory and constitutional requirements than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where [a claim] is ... void because not in compliance with express statutory ... provision, a court of equity cannot interpose to give validity to such [a claim], or any part thereof.

*Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893). Nor may equity, "by avowing that there is a right but no remedy known to the law,

---

to) the holding in *Croft.* We believe that *Croft* rested entirely on the fact that the district court ordered and the Marshal failed to effect Croft's immediate incarceration. The court even anticipated and implicitly rejected (albeit in dicta) the argument that primary jurisdiction in the federal government was relevant to its decision. It specifically discussed the government's argument in *Smith* that the prisoner's federal sentence could not begin to run upon the Marshal's failure to execute the court's order because the state had primary jurisdiction at that time, and then quoted approvingly the *Smith* court's response to that argument that "'mere subordinate administrative officials such as the state sheriff and federal marshal'" may not bind their respective sovereigns as to which sovereign shall, as a matter of comity, have primary jurisdiction. 450 F.2d at 1098 (quoting *Smith,* 91 F.2d at 262); *see also id.* at 1099. And, although the existence of the *subsequently imposed* concurrent sentence almost certainly in-

fluenced the court's decision to resort to equity in the first place, *see id.* at 1096–97, the absence of an extant concurrent sentence *at the time of the district court's order* confirms that the presence of a concurrent sentence also was not relevant to the court's ultimate reasoning. We are thus convinced that the *Croft* court would, as a matter of principle, have had to reach precisely the same result if the state, rather than the federal government, had had primary jurisdiction over Croft at the time of the district court's order or if there had been no concurrent state sentence imposed by the state court.

**8.** Such an interpretation of section 3568 would contradict this court's holdings that a federal court has no power to order that a federal sentence run concurrently with an existing or subsequently imposed state sentence. *See Cobb v. United States,* 583 F.2d 695, 696–97 (4th Cir. 1978); *Ange v. Paderick,* 521 F.2d 1066, 1068 (4th Cir.1975).

create a remedy in violation of law, or even without the authority of law." *Rees v. City of Watertown*, 86 U.S. (19 Wall.) 107, 122, 22 L.Ed. 72 (1874); *accord INS v. Pangilinan*, 486 U.S. 875, 883, 108 S.Ct. 2210, 2215, 100 L.Ed.2d 882 (1988) (quoting *Hedges* and *Rees*). Equity, therefore, is without power to prescribe any method for computing Thomas' term other than that set forth in section 3568. If there be a remedy for the failure of a United States Marshal to execute a court order to deliver a prisoner immediately to federal prison, then that remedy lies in mandamus to require delivery, not in habeas corpus to obtain equitable relief from application of the statute.[9]

## CONCLUSION

Title 18, section 3568 dictates that federal sentences commence on the date the prisoner is received at the penitentiary for service of his sentence, and it provides unequivocally that "[n]o sentence shall prescribe any ... method of computing the term" other than that specified therein. Appellee Thomas was received at the penitentiary for service of his federal sentences on September 24, 1986. Under the plain language of section 3568, his federal sentences commenced on that date. Accordingly, the twenty-five year term to which he was sentenced ends on September 23, 2011. This court, as was the district court, is without authority to compute appellee's term in any other manner.

The order of the district court granting Thomas' petition for a writ of habeas corpus is therefore reversed. The case is remanded to the district court with instructions to enter an order denying Thomas' petition for habeas corpus.

REVERSED AND REMANDED.

K.K. HALL, Circuit Judge, concurring:

I concur in the result reached by the majority, but I would decide the case on the basis of state law. I do not believe that 18 U.S.C. § 3568 demands the rigid interpretation set forth by the majority.

The fundamental issue is, of course, what was the *total* sentence imposed on Thomas. If the state sentence was made concurrent to the previously imposed federal sentence, either expressly or by operation of state law, then a low-level administrative decision about where to first incarcerate Thomas should not be permitted to override the state court's decision. The federal statute upon which the majority bases its decision is not so unyielding as to not allow exceptions in similar situations. *See, e.g., Gomori v. Arnold*, 533 F.2d 871 (3rd Cir.1976) (referring to practice by which the Attorney General may, upon a federal court's recommendation, order that a federal sentence be served at the state institution at which the defendant is then serving a state sentence); *see also Ange v. Paderick*, 521 F.2d 1066 (4th Cir.1975) (same).[1] Had Thomas's state sentence been made expressly concurrent, and, if by happenstance he had been sent first to federal prison, he would have had to serve at least eight fewer years behind bars.

I concur in the judgment, however, because it is clear that at the time Thomas was sentenced in state court, Pennsylvania law presumed, in view of the state court's silence, that the state sentence would be consecutive to a previously imposed sentence by a different sovereign. *See Commonwealth ex rel. Pitts v. Myers*, 196 Pa.Super. 277, 175 A.2d 331 (1961) (holding that the presumption of concurrency applies only in the case of a subsequently imposed sentence by the same court to the same prison); *see also Commonwealth v. Pfeiffer*, 396 Pa.Super. 641, 579 A.2d 897 (1990) (construing the current law, Pa. R.Crim.P., Rule 1406, 42 Pa.C.S.A., to the same effect). I join the judgment of the court, but only because the law of Pennsyl-

---

**9.** Thomas also presents a *pro se* argument, disclaimed by his counsel, "that his rights under the Full Faith and Credit clause," U.S. Const. art. IV, § 1, "would be violated by running his sentences consecutively." Appellee's Br. at 23. We reject this claim as meritless.

**1.** At oral argument, counsel for the government conceded that had Thomas been found not guilty of the state charges, the federal sentence would have been given a beginning date as of the date of the federal detainer first lodged against him.

vania dictates the result. Were it otherwise, I would hold that 18 U.S.C. § 3568 would admit of a result that would effectuate the intent of the state court.[2]

---

**2.** I seriously doubt that the state sentencing judge was made aware of the federal sentence earlier imposed upon Thomas. The record is silent concerning this point. Thomas's lawyer at the state sentencing hearing pointed out to the court that he had "no communication" at all with his client (though he had spoken to Thomas's parents), and, further, that Thomas's mental state was "unbalanced." An insanity defense was presented at his state trial, but it did not go to the jury. It is not unlikely that Thomas's state court lawyer was unaware of the federal sentences.