Donald George EMIG

v.

Griffin BELL, Attorney General, Department of Justice, et al.

Civ. No. B-77-233.

United States District Court, D. Connecticut.

Jan. 12, 1978.

Donald George Emig, pro se.

Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, an inmate at Federal Correctional Institution, Danbury, brings this action to secure credits against his federal sentence. The facts are somewhat complex. Petitioner was arrested by Colorado authorities on April 12, 1973, on check fraud charges. Unable to post bond he remained in state custody until transferred to Syracuse, New York, where he was sentenced in

federal district court on October 11, 1974, for making a false statement on a loan application. He was returned to state custody in Colorado. On January 15, 1975, a federal court in Colorado sentenced petitioner on another charge of making a false statement on a loan application, and he was again returned to state custody.

On February 14, 1975, petitioner was convicted of the state charge of check fraud. Before sentencing, however, on February 18, 1975, petitioner was charged by Colorado authorities with conspiracy to commit second-degree burglary. On May 30, 1975, he was sentenced on the first state charge to a term of sixteen years. On June 11, 1975, federal detainers were lodged against him. On July 3, 1975, he pled guilty to the second state charge and was sentenced to a concurrent term of fifteen to twenty years. That sentence was reduced by the court on September 29, 1975, to an indeterminate term of up to ten years. On July 6, 1976, his conviction on the first state charge was reversed by the Colorado Supreme Court. Petitioner remained in state custody pursuant to the conviction on the second state charge until May 6, 1977, when he was paroled to federal custody. Petitioner subsequently filed this action seeking credit on his federal sentence for portions of the time he spent in state custody.

The starting point in considering the multiple claims presented is the fundamental proposition that time served on an unrelated state sentence that has been voided cannot be credited against a federal sentence. *Scott v. United States,* 434 F.2d 11, 21 (5th Cir. 1970); *Green v. United States,* 334 F.2d 733, 736 (1st Cir. 1970); *Mize v. United States,* 323 F.Supp. 792, 794–5 (N.D. Miss.1971).

Petitioner's entitlement to credit, if any, depends on the application of 18 U.S.C. § 3568, which provides that "The Attorney General shall give [a federal prisoner] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." This section is applied according to the regulations contained in Bureau of Prisons Policy Statement 7600.59 (May 27, 1975) (the Policy). The Policy provides in § 4(b)(1) that credit can be given for time spent in "actual or constructive" federal custody, and § 4(c) describes what constitutes "constructive" custody for this purpose.

One set of circumstances constituting constructive custody arises when "the federal inmate has been in state custody on essentially the same charges," in which case credit will be given on the federal sentence for time spent in state custody. § 4(c)(1)(b). The standard for finding that the state and federal sentence resulted from the "same charges" is a strict one. See, *e. g.,* Policy § 4(c)(1)(b), examples; *Fontaine v. United States,* 434 F.2d 1310, 1311 (5th Cir. 1970); *Gilbert v. United States,* 299 F.Supp. 689, 692 (S.D.N.Y.1969); *Dillinger v. Blackwell,* 277 F.Supp. 389, 390 (N.D.Ga.1967); *United States v. Beeker,* 275 F.Supp. 608, 609 (D.Md.1967).

From the allegations in the petition, it does not appear that there is a sufficient relationship between either of the state convictions and either of the federal convictions to meet this standard. It is most unlikely that the federal conviction in New York for making a false statement on a loan application has anything to do with the state charges in Colorado. Similarly, the federal conviction in Colorado for making a false statement on a loan application is almost surely unrelated to the state conviction for conspiracy to commit second-degree burglary. To the extent it may be related to the state conviction for check fraud, petitioner has not alleged any facts to indicate the requisite relationship. Therefore, insofar as the petition may be alleging that a state and federal conviction arose from the "same charges," it is dismissed with leave to amend if petitioner can allege facts to show sufficient relatedness.

A federal prisoner may also receive credit when the state and federal sentences are unrelated if "a federal detainer is lodged, the prisoner does not make state bail, and the state fails to give jail credit

for the time." Policy § 4(c)(2)(b). Petitioner seeks to apply this provision to the period of pre-trial state incarceration that began with his arrest on October 12, 1973, and continued until the first state sentence was imposed on May 30, 1975. In order to determine the validity of petitioner's claim, each of the three criteria in the regulation must be considered in turn.

One criterion is inability to make bail. Petitioner alleges that after his arrest bail was set but that he was unable to make bail because of his indigency. The Government has not challenged this assertion in its answer or in either of its two supplemental responses. I will therefore accept, as undisputed, that bail was set and that petitioner was unable to make it. If the Government wishes to challenge this factual assertion by the petitioner, it may do so by a motion to reconsider submitted with supporting affidavits within thirty days of the filing of this opinion.

Another criterion for credit is that a federal detainer has been lodged. In this case a federal detainer was not lodged until June 11, 1975—after the date of petitioner's sentencing on the first state charge. However, the petitioner had been sentenced by a federal court on October 11, 1974, and again on January 15, 1975. The issue therefore is whether a prisoner can receive credit for time spent in state custody while unable to make bail when there is a federal sentence outstanding against him, but a federal detainer has not yet been lodged. A similar issue was presented in *United States v. Gaines*, 449 F.2d 143 (2d Cir. 1971). In that case petitioner was in state custody and unable to make bail while there was an outstanding federal sentence. The state charges were later dropped and Gaines sought credit on his federal sentence for the time spent in state custody. The Second Circuit had first rejected the claim, 436 F.2d 1069, but after remand, 402 U.S. 1006, 91 S.Ct. 2195, 29 L.Ed.2d 428, the Court agreed that credit should be given on the theory that if Gaines had been able to make bail on the state charges, he could have begun serving his federal sentence. See *United States v. Downey*, 469 F.2d 1030,

1031 (8th Cir. 1972); *Sancinella v. Henderson*, 380 F.Supp. 1393, 1395 (N.D.Ga.), aff'd, 502 F.2d 784 (5th Cir. 1974). That is the same position that petitioner here is in. He could have begun serving his federal sentence when it was imposed on October 11, 1974, if he had been able to raise the state bail. Therefore, the purpose of the detainer requirement of the regulation has also been met.

More problematic is the criterion that the petitioner has not already received credit from the state. Under the terms of the Policy, "[o]rdinarily, if a sentence results from the state charges, there will be a presumption that the prisoner did receive credit for pre-sentence time, however, this may be rebutted if the prisoner can demonstrate that the state did not credit the time." § 4(c)(2)(b). In the present case the presumption is applicable because the state charge that precipitated the pre-trial incarceration resulted in a sentence. That sentence was later voided however, so the presumption is rebutted under the provision in the same section of the Policy that "[f]ailure to give jail credit (by the state) may be assumed in any of the following events: . . . (2) the state sentence is vacated with further prosecution deferred, thereby effectively vacating the state's prior award of jail credit . . . ." Under that provision it appears that the petitioner did not receive credit from the state and that he should receive it on his federal sentence.

In this case, however, the petitioner was convicted of a second state offense and sentenced on July 3, 1975. This was after the original sentence began on May 30, 1975, but before the original sentence was vacated on July 6, 1976. The second sentence was ordered to run concurrently with the first sentence and contained the following provision: "[c]onsideration given for time spent in Jail awaiting trial and sentencing in setting this sentence."

The Government vigorously argues that this language demonstrates that the second state sentence—for conspiracy to commit second-degree burglary—took into account

the time spent in pre-trial incarceration and that the petitioner should not now receive credit for it. The difficulty with that position is that the July 3, 1975, sentence, as originally imposed, is not the one the petitioner actually served. That sentence was modified on September 29, 1975, by reducing it to an indeterminate term of up to ten years. It is this later sentence which must be considered to determine if the pre-trial time was taken into account.

■ Under the statutes of Colorado, second-degree burglary is a class 3 felony when committed on a dwelling. Colo.Rev. Stat. § 18–4–203(2) (1973). Colorado punishes conspiracy in accordance with the classification of the substantive offense that was the object of the conspiracy. Prior to petitioner's original sentence on the burglary conviction, the applicable statute provided that "[c]onspiracy is a crime of the same class as the most serious offense which is the object of the conspiracy." Colo.Rev. Stat. § 18–2–206(1) (1973). Thus conspiracy to commit a class 3 felony was itself a class 3 felony. The statute was later amended, however, so that the applicable provision now reads ". . . conspiracy to commit a class 3 felony is a class 4 felony." Colo. Rev.Stat. § 18–2–206 (Supp.1976). This statutory change was apparently the motivation for the reduction in sentence by the state court on September 29, 1977. The maximum penalty for a class 3 felony—as petitioner's crime was originally classed—is forty years, Colo.Rev.Stat. § 18–1–105, and petitioner received fifteen to twenty years. On resentencing, the crime was classified as a class 4 felony for which the maximum penalty is ten years or $30,000 or both. The court imposed an indeterminate sentence of up to ten years. Thus it is clear that although the petitioner received less than the maximum when originally sentenced, on resentencing, the maximum was imposed.

This imposition of the maximum term, reinforced by the absence of any language purporting to take into consideration the pre-trial time, demonstrates that petitioner did not receive credit on his state sentence for the pre-trial time. Consequently he is entitled to credit on his federal sentence for the time spent in state custody while unable to make bail, beginning with October 11, 1974, the date his first federal sentence was imposed, and running until May 30, 1975, the date his first state sentence was imposed.

Petitioner is not, however, entitled to credit for the time following the imposition of that first state sentence. From that point forward his custody was due to his serving a facially valid state sentence and not to his inability to meet a bond requirement. Petitioner's remedy, if any, for the time spent between the imposition of the first state sentence on May 30, 1975, and the imposition of the second state sentence on July 3, 1975, is a state court proceeding to adjust the second sentence to take into account the "dead time" served on the first sentence before it was vacated. Whether or not Colorado chooses to credit this "dead time" against the second state sentence, petitioner has no federally protected right to have this time credited against his federal sentence.[1]

Petitioner's next contention is that since he is to receive credit on his federal sentence for the time spent in pre-trial incarceration, he should also receive good time credit for the same period. The starting point for his claim is 18 U.S.C. § 4161, which provides that

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subject to punishment, shall be

1. This result is not affected by the fact that the sentence on the second state charges originally was to run concurrently with the first state sentence. As amended, the sentence on the second charge is silent as to whether it is consecutive or concurrent, but even if it was concurrent, the period of concurrency would begin with the imposition of the second sentence, not with the imposition of the original sentence. Thus the concurrency of the second state sentence affords no basis for receipt of credit on the federal sentence for the "dead time."

entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run

. . . .

No case law on point has been found under this statute. An analogous problem arose under a predecessor statute in *Aderhold v. Ellis*, 84 F.2d 543 (5th Cir.), *cert. denied*, 299 U.S. 587, 57 S.Ct. 123, 81 L.Ed. 433 (1936). There the petitioner was convicted of a federal offense while serving a state sentence in state custody. His state term expired while his federal conviction was on appeal, but he remained in state custody. After the appeal was denied, his federal sentence was adjusted so that it began on the date his state sentence ended. Petitioner was denied good time credit, however, for the period running from the end of the state sentence until he was physically in federal custody. The Fifth Circuit held that it was proper to compute good time credit only for the period spent in federal custody and not for the time spent in state custody even though that state time had been credited to the federal sentence. The Court relied heavily on the language of the statute, which has since been changed.

However, the present practice of the Bureau of Prisons produces a different result. Telephone conversations with officials of the Bureau of Prisons confirmed that there is no Bureau of Prisons Policy Statement explicitly considering this problem. Nevertheless, the procedures employed by the Bureau in computing sentences appear to produce the result petitioner seeks. Sentence computation involves several steps. When a prisoner comes into the custody of the Attorney General, the Bureau determines his full-term date. From that date is subtracted any jail-time credit he has earned, which in this case includes a portion of petitioner's pre-trial incarceration as discussed above. The Bureau then computes the total amount of good time credit that can be earned on the sentence imposed by multiplying the monthly rate in the statute by the number of months in the sentence. The resulting total is subtracted from the prisoner's sentence. The net effect of this procedure is to give a prisoner good time credit for the time spent in state custody which was credited to his federal sentence.

█ Consequently, insofar as petitioner seeks judicial intervention to accomplish this result, his claim will probably become moot once the Bureau of Prisons credits him with jail time to the extent required by this decision. As to this claim for good time credit, the petition is dismissed without prejudice. The Government should submit a supplemental response within thirty days of the filing of this opinion, demonstrating the method of sentence computation employed after the jail time discussed above is credited.

Petitioner's next claim is that the Attorney General should have designated each of the Colorado state institutions where petitioner was held as an "available, suitable, and appropriate institution or facility" pursuant to 18 U.S.C. § 4082. Presumably the argument is that if the Attorney General had exercised his power to designate those institutions as the places of federal confinement after petitioner was sentenced by the federal courts, the effect would have been to allow petitioner to begin serving his federal time concurrently with his state incarceration.

██ This claim is without merit. "The place of detention of petitioner is within the sole discretion of the Attorney General and the Bureau of Prisons." *United States ex rel. Konigsberg v. Warden*, 239 F.Supp. 724 (S.D.N.Y.1965), citing 18 U.S.C. § 4082; see, *Clay v. Henderson*, 524 F.2d 921, 924 (5th Cir. 1975). Moreover, since a federal district court cannot order that a federal sentence be served concurrently with a state sentence, see *United States v. Huss*, 520 F.2d 598, 602 (2d Cir. 1975), it is doubtful that a district court can award a remedy for the Attorney General's failure to exercise his discretion in a manner that would have achieved that result.

Accordingly, it is hereby ORDERED

That the Bureau of Prisons will recompute the petitioner's sentence in accordance with this opinion, and

The Government shall file a response within thirty days demonstrating compliance with this order, and

With respect to the petitioner's other claims, the petition is dismissed.