**Thomas OSES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 92–11562–WD.

United States District Court, D. Massachusetts.

July 30, 1993.

Anthony Mirenda, Foley, Hoag & Eliot, Boston, MA, for petitioner.

Thomas Oses, pro se.

James Lang, Timothy Q. Feeley, U.S. Attys. Office, Boston, MA, for respondent.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

Thomas Oses is a federal prisoner currently serving what remains of his four year federal sentence. He has already completed service of a previous state sentence which was modified in a plea bargain after he successfully obtained from this court a writ of habeas corpus vacating his initial state court conviction. Oses now petitions this court for a second writ of habeas corpus to secure his release from federal custody. The question raised is whether a federal prisoner is entitled to credit against his federal sentence for time served on that portion of a state sentence effectively nullified after a determination that the state conviction violated the federal constitution. I answer the question in the negative and thus deny the petition.

## I. BACKGROUND

On October 7, 1991, I granted petitioner's first petition for habeas corpus, finding that his federal constitutional rights had been violated during the course of the state trial that had produced his initial conviction in 1977, for which he had received a sentence of life imprisonment. *Oses v. Commonwealth of Massachusetts*, 775 F.Supp. 443 (D.Mass. 1991), *aff'd*, 961 F.2d 985 (1st Cir.) (per curiam), *cert. denied*, —— U.S. ——, 113 S.Ct. 410, 121 L.Ed.2d 334 (1992). After the habeas proceeding, the Commonwealth reinstitut-

ed the criminal case against Oses. In late February of 1993, he pled guilty to the state charges against him and was sentenced to 14–15 years in the Massachusetts Correctional Institute at Cedar Junction. By that time, however, Oses had already been in prison for nearly 16 years following his 1976 arrest on the state charges.[1] Following Oses' plea and sentence in 1993, the Commonwealth determined that Oses had fully served his new 14–15 year sentence more than seven years earlier. On April 22, 1993, the Massachusetts Commissioner of Correction executed *nunc pro tunc* a certificate of discharge from state custody effective June 18, 1985. (Agreed–Upon Statement of Facts [hereinafter "Agreed Facts"] ¶ 6 & Exh. D.)

Despite the state's retroactive characterization of his discharge from state custody, Oses was not yet a free man. During his initial period of imprisonment, he had been convicted and sentenced to four years in prison on a federal charge. The federal sentence was intended, in the words of the federal judgment and commitment order, "to run consecutive to the life sentence imposed by the Massachusetts state court on July 8, 1977...."[2] (Agreed Facts ¶ 2, Exh. B.)

Oses argued to the Federal Bureau of Prisons that because, in retrospect, his state sentence had lawfully expired as of June 18, 1985, he was entitled to credit against his federal sentence for the duration of his state imprisonment from that date onward. Under Oses' theory, he had completed his four-year federal sentence as of 1989.

The Bureau of Prisons disagreed. The Bureau noted that it was not until July 30, 1992, that Oses was formally received into federal custody while the state was still considering whether to pursue retrial after the grant of the first habeas petition. The Bureau did nevertheless allow Oses credit toward his federal sentence for the period of his state detention beginning October 7, 1991, the date on which this court granted

---

1. Although he was convicted in 1977, Oses did not receive direct review by the state appellate court and consequently could not exhaust his state remedies as a condition precedent to federal habeas corpus proceedings until 1988.

2. From 1979 to 1981, Oses served his state sentence in the Federal Correctional Institute at Oxford, Wisconsin. During that time, he was charged with and pled guilty in federal court to the offense of assaulting a fellow inmate in that federal institution.

the writ of habeas corpus invalidating his state conviction. According to Bureau computations, Oses is not scheduled to complete serving his federal sentence until November of 1994.

His remedies with the Federal Bureau of Prisons having been exhausted, Oses now pursues in this court the instant petition for a writ of habeas corpus to challenge the calculation of his federal sentence.[3] *Cf. United States v. Wilson,* — U.S. —, —, 112 S.Ct. 1351, 1355, 117 L.Ed.2d 593 (1992). He argues that his continued imprisonment violates the Due Process Clause of the Fifth Amendment. The government replies that the unambiguous language of the applicable statutory provision, 18 U.S.C. § 3568, *repealed,*[4] Pub.L. No. 98-473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), precludes Oses from receiving credit against his federal sentence for time served under the nullified portion of his state sentence, and further, that § 3568 so applied does not violate the Constitution.

## II. APPLICATION OF 18 U.S.C. § 3568

■ Section 3568 of Title 18 provides:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term "offense" means any criminal offense . . . which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

. . . . .

No sentence shall prescribe any other method of computing the term.

18 U.S.C.A. § 3568 (1982). Although § 3568 was repealed in 1984,[5] it continues to be applicable with respect to offenses—including the federal offense of which Oses was convicted—committed prior to November of 1987.

The government does not dispute that Oses has now formally been deemed to have completed serving his state sentence as of June 18, 1985. The government argues, however, that under the literal and established interpretation of § 3568, Oses is precluded from receiving any federal credit for the cancelled part of his state sentence, even though on that interpretation, his detention from 1985 to 1991 would in retrospect be-

---

3. Shortly after a hearing on defendant's summary judgment motion had been held, Oses wrote to this court *pro se* purporting to withdraw his petition without prejudice. Treating this communication as a motion for dismissal, I deny it. Prior to the filing of Oses' letter, the parties had already fully briefed and argued the merits of the petition on a motion for summary judgment. Accordingly, the petitioner may not effect unilateral dismissal save upon court order. Fed. R.Civ.P. 41(a)(1)–(2). The petitioner has erratically in this and in other litigation before me sometimes purported *pro se* to pursue a litigation strategy independently of and at odds with that of his counsel. That appears to be the case with his eleventh hour effort to seek dismissal without prejudice. In any event, I decline to order dismissal pursuant to Fed.R.Civ.P. 41(a)(2) because of the prejudice to the defendant that would result from pretermitting resolution of an important legal issue toward which it has expended substantial resources. Moreover, I note that the court has made a special effort to resolve petitioner's claim on a timely basis. The case is ripe for resolution on the merits and dismissal at this stage would be inappropriate.

4. The repeal took effect on Nov. 1, 1987, but only for offenses committed after that date.

5. The corresponding statute currently in effect but not applicable to Oses is 18 U.S.C. § 3585, which provides:

   **(a) Commencement of sentence.** A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

   **(b) Credit for prior custody.** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

   (1) as a result of the offense for which the sentence was imposed; or

   (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.

   18 U.S.C.S. § 3585 (1990). *See generally United States v. Wilson,* — U.S. —, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

come "dead time" not credited to any valid sentence.

■ The language of the statute is without material ambiguity. A federal sentence "commence[s] to run" when the prisoner is received at the facility where he is to serve his federal time; he may receive credit for time served prior to that point only if such time was "in connection with" the federal offense. Thus, under the established rule, a federal prisoner is not entitled under § 3568 to receive credit against a federal sentence for time served on an unrelated, nonconcurrent state sentence. *See Thomas v. Whalen,* 962 F.2d 358, 364 (4th Cir.1992); *Bloomgren v. Belaski,* 948 F.2d 688, 690 (10th Cir.1991); *Meagher v. Clark,* 943 F.2d 1277, 1283 (11th Cir.1991); *Pinaud v. James,* 851 F.2d 27, 30 (2d Cir.1988); *United States v. Garcia–Gutierrez,* 835 F.2d 585, 586 (5th Cir.1988); *United States v. Winter,* 730 F.2d 825, 826 (1st Cir.1984); *Scott v. United States,* 434 F.2d 11, 21 (5th Cir.1970); *Green v. United States,* 334 F.2d 733, 736 (1st Cir.1964), *cert. denied,* 380 U.S. 980, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965); *Holleman v. United States,* 612 F.Supp. 384, 387 (N.D.Ind.1985); *Emig v. Bell,* 456 F.Supp. 24, 26 (D.Conn. 1978). This principle holds true even when the federal prisoner has served time under a state sentence that was subsequently voided; the federal government has no obligation to credit a prisoner with "dead time" spent in state confinement. *See Pinaud,* 851 F.2d at 31; *Scott,* 434 F.2d at 21; *Green,* 334 F.2d at 736; *Holleman,* 612 F.Supp. at 387; *Emig,* 456 F.Supp. at 26; *Johnson v. Henderson,* 328 F.Supp. 704, 705 (E.D.La.1971), *aff'd,* 455 F.2d 983 (5th Cir.1972).

As the government observes, Oses' case is closely analogous to the situation confronted by the First Circuit in *Green.* There, the court started from the proposition that "there is no impropriety ... in imposing a federal sentence to commence upon completion of a state sentence presently being served." 334 F.2d at 736. Then, holding that the "statutory command" of 18 U.S.C. § 3568 "is absolute," the court expressly refused to allow petitioner to receive credit against his federal sentence for time he had served under a nonconcurrent state sentence that was voided on direct review by the state appellate court.[6] *See Green,* 334 F.2d at 736.

Oses does not in fact challenge the traditional interpretation of § 3568 and does not appear to dispute that under a straightforward reading of the statute, he has no right to federal credit for his "dead time" in state prison. Although Oses does argue (as an alternative to his constitutional claim) that the court should create an *ad hoc* exception to the literal application of § 3568 that would allow for such credit, he does not contend that such an exception could be rooted in the language of the statute or in the case law interpreting it. Nor does Oses' case fit within any of the existing judicially-fashioned adjustments to the literal terms of the statute.[7]

6. The petitioner had argued that the "state sentence having been reversed, was void, and hence in law never existed, so that his federal sentence should be held to commence on the day it was imposed." *Green,* 334 F.2d at 736. The court expressed its opinion that the argument had a "certain appeal" but rejected it nevertheless. *Id.*

7. For example, one such exception has been recognized as mandated by the Equal Protection Clause: when a state inmate is unable to raise bail solely because of his indigency and is thereby delayed from beginning service of a consecutive federal sentence, any "dead time" that results from that inmate's inability to raise state bail must be credited to the federal sentence. *See United States v. Gaines,* 449 F.2d 143 (2d Cir.1971) (on remand from the Supreme Court, 402 U.S. 1006, 91 S.Ct. 2195, 29 L.Ed.2d 428 (1971)); *Kincade v. Levi,* 442 F.Supp. 51, 53–54 (M.D.Pa.1977) (explaining the *Gaines* rule).

Another judicially recognized fine-tuning of § 3568 deals with situations in which a prisoner is held in state custody on federal detainer. As Judge Coffin has explained,

In general, a federal prisoner cannot be given credit for time spent in state prison on an unrelated charge.... Courts have qualified this rule with an exception that applies "if the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one." *Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982).... Thus, if a federal detainer were lodged against a prisoner about to be released from state custody, any days that the state held him beyond what would otherwise have been his release date, to await the arrival of the federal marshal, would be time served 'in connection with' his federal offense.

*Winter,* 730 F.2d at 826–27 (some citations omitted); *accord Bloomgren,* 948 F.2d at 690; *United*

Because Oses does not dispute that § 3568 applies to him, and because § 3568 by its unambiguous terms precludes his claim for time-served credit, this petition can succeed only if application of § 3568 to deny Oses such credit would itself be impermissible.

## III. THE CONSTITUTIONAL CLAIM

### A.

■ Oses argues that the Bureau of Prison's application of 18 U.S.C. § 3568 to deny him federal credit for the time he served in state prison from 1985 onward violates the principle of equal protection implicit in the Fifth Amendment's Due Process Clause.

The argument runs as follows. Oses first posits that where a federal prisoner is sentenced to consecutive federal prison terms, and the first sentence is vacated after its commencement, the federal prisoner is entitled to have credited against his second federal sentence the time served under the voided federal sentence. In support of this assertion Oses cites *Ekberg v. United States*, 167 F.2d 380 (1st Cir.1948) and *Meadows v. Blackwell*, 433 F.2d 1298 (5th Cir.1970). Given this premise, Oses claims that it would violate the principle of equal protection to deny a federal prisoner credit for time served under an invalidated *state* sentence. In other words, Oses' equal protection theory is that § 3568 without rational justification treats federal prisoners seeking credit for time served under an invalidated state sentence differently than federal prisoners seeking credit under an invalidated federal sentence.[8]

Oses' equal protection claim fails for two reasons: (1) its premise is questionable—it is at best unclear whether petitioner has correctly stated the rule for allocation of credit against a federal sentence for time served under a voided nonconcurrent federal sentence; but, more importantly, (2) § 3568 cannot tenably be thought to trigger equal protection concerns on the grounds advanced by Oses.

I do not linger on the first difficulty, except to observe that the language of § 3568 unequivocally limits federal credit of *any* kind to time spent in custody "in connection with the offense or acts for which the sentence was imposed" and specifically provides that "no sentence shall prescribe any other method of computing the term." 18 U.S.C. § 3568.[9] Oses' reading of *Ekberg v. United*

*States v. Harris*, 876 F.2d 1502, 1507 (11th Cir.), *cert. denied*, 493 U.S. 969, 1005, 110 S.Ct. 417, 569, 107 L.Ed. 382, 563 (1989); *cf. Emig*, 456 F.Supp. at 26–27 (discussing the notion of "constructive" federal custody). Here, Oses does not suggest that he was ever constructively in federal custody during his time in state prison.

I note that the decision of the Bureau of Prisons to credit Oses with time served in state prison from October 7, 1991 (the date on which Oses' first habeas petition was granted) to July 1992 (when he was delivered to federal custody) appears to rest on the *Winter* rationale. That is, when this court in 1991 granted the petition and the Commonwealth did not timely take steps to retry him, Oses might presumably have been entitled to release from state custody (on bail, at least) but for the federal detainer that had been lodged against him. Under that interpretation, Oses could properly be said to have been constructively in federal custody from 1991 to 1992 within the meaning of *Winter* and *Emig*. In the words of the Bureau of Prisons' final administrative decision:

[a]s *no* credit was applied to either the state or federal sentence for the time from October 7, 1991, through July 29, 1992, and as the federal judgment prevented a release from federal

confinement, that period of time has been credited to [Oses'] federal sentence.

8. Oses contends in addition that where a *state* prisoner is sentenced to serve two consecutive state sentences, and the first sentence is vacated after its commencement, the state prisoner would be entitled—as a matter of federal law—to have time served under the invalidated sentence credited to the second, consecutive sentence. In support of this proposition, Oses cites *Johnson v. Henderson*, 328 F.Supp. 704 (E.D.La.1971), *aff'd*, 455 F.2d 983 (5th Cir.1972). Putting aside the serious question whether Oses has correctly interpreted *Johnson*, it is difficult to see the relevance of that case to the constitutionality of 18 U.S.C. § 3568, which applies only to federal prisoners.

9. The final administrative decision of the Bureau of Prisons, denying Oses the additional credit he seeks here, interpreted the statute in accordance with the Bureau's administrative regulation, which directs that "jail time credit will not be given for any portion of time spent serving another sentence, *either federal or non-federal*, except ... [where] the later sentence is based on the same charges that led to the prior, vacated sentence." Bureau of Prison's Program Statement 5880.24, ¶5.b(2) (emphasis supplied).

*States* for a broader proposition is not supported by the facts of that decision.[10] To the extent that *Meadows v. Blackwell* does support the broader proposition for which Oses invokes it, I note that the one-page per curiam opinion in that case contains not a single reference to the statute and consequently cannot be said to have confronted the relevant statutory question head on, if at all.

In any event, even if, for purposes of analysis, one were to accept Oses' contention that § 3568 has been interpreted to treat prisoners seeking credit for state sentences differently than prisoners seeking credit for federal sentences, no constitutional concerns sounding in equal protection would thereby be triggered. The purported disparity in treatment to which Oses points rests not on any differential classification of prisoners, but on a fundamental constitutional policy. The federal government, under our federal system of dual sovereignty, need not treat time served under a federal sentence as the equivalent—either formal or functional—of time served under a preceding state sentence.

■ It is elementary that the United States and the several states constitute separate sovereignties, and that each sovereign is free to exercise its own prerogatives, within the limits set by the federal Constitution, to convict and punish criminals in accordance with its own sense of discretion, justice, and utility. Under the basic notion of dual sovereignty, the United States bears no obligation as a constitutional matter to refrain from imposing its own punishment upon a person convicted of violating its laws merely because one of the several states has taken similar

action against that person with respect to its own laws, even if for essentially the same conduct. *See generally Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *cf. Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (successive prosecutions by two states for the same conduct held constitutionally permissible). This principle holds all the more strongly when, as in this case, the offense committed against the federal government is wholly unrelated to the offense committed against the state.

Of course, neither the federal nor a state government may transgress the boundaries of the United States Constitution. Thus, when a state obtains a conviction in a manner that violates the Constitution, the state will be barred from enforcing any punishment stemming from the invalid conviction. If, however, the state chooses to conduct a new trial and subsequently obtains a constitutionally sound conviction, the state retains discretion to re-impose the previously voided punishment upon the convicted defendant. When, as here, the state exercises that discretion in such a manner as to impose a sentence that is in form *shorter* than the time period the defendant has already spent in state imprisonment (as a result of the initial invalid conviction), the state may certainly decide that the prisoner has fully served his state sentence and grant him an immediate discharge. But where the prisoner upon that discharge has yet to serve time "in connection with the offense or acts" for a consecutive federal sentence that has been imposed, the federal government, unburdened by the state's creation of "dead time," may take the

**10.** In *Ekberg,* the appellant had been convicted on a three-count federal charge and sentenced to two consecutive federal prison terms, the first for the conviction on count 1 and the second for counts 2 and 3. On direct review, the First Circuit found that the first count was impermissibly duplicative of the second two and thus ran afoul of the double jeopardy bar. As Judge Magruder explained,

[C]ount 1, for the reason stated, failed to charge an offense separate and distinct from the offenses set forth in the other two [and thus] failed to charge any offense at all.... Therefore, the court should not have imposed a separate sentence on count 1, and the time which appellant spent in the penitentiary under that sentence becomes legally referable to the concurrent sentences imposed on counts 2 and 3.

*Ekberg,* 167 F.2d at 387–88. In other words, because the crime charged in count 1 was the *same offense* as that charged in counts 2 and 3, the time served by appellant for his conviction on count 1 had to be credited toward his sentence for the convictions on counts 2 and 3. Clearly, then, *Ekberg* does not support the proposition for which Oses seems to cite it, namely, that § 3568 might allow a prisoner to receive credit against his federal sentence for time served under a nonconcurrent and *unrelated* federal sentence that was voided after having been partially served.

prisoner into its custody in order that he may serve out his federal sentence. It follows from the principle of dual sovereignty that the state's creation of circumstances which, in retrospect, have the effect that the prisoner may be deemed to have "overpaid" his debt to the state sovereign creates no correlative obligation on the part of the federal government to cancel an equal part of the federal debt still independently owed it by the prisoner.

## B.

At first blush, it might seem unfair that Oses' state imprisonment from 1985 onward has turned out to be "dead time" not attributable, in retrospect, to any valid sentence. But there is nothing necessarily unconstitutional about the notion of "dead time." For example, suppose that a state prisoner is convicted on a single criminal charge and then files an appeal, and that during the pendency of the appeal, the prisoner spends several years in state prison. Suppose further that the prisoner's conviction is reversed on direct review because it was obtained in violation of state law, and that the prisoner is subsequently released and never retried. It is clear that the prisoner has, in retrospect, spent time in state prison not attributable to any valid sentence; but just as clearly, it does not follow—absent a showing of false arrest or the like—that any unfairness of federal constitutional dimension has been visited upon him.

Facially, it appears that by the time Oses completes service of his federal sentence, he will have spent 18 years in official custody, whereas if he were to receive federal credit for his "dead time," he would have spent only 13 years in custody before being entitled to release. But to frame the question with which this petition is concerned in terms of simple arithmetic is to ignore the legerde-

main by which the state contributed to this result. In fact, the apparent harshness of denying Oses federal credit for the time he served in state prison from 1985 onward is artificially magnified by the peculiar legal fiction the state has created: its certificate of discharge made effective, *nunc pro tunc*, as of June 1985. The state chose in 1993 to negotiate with Oses an anachronistic plea bargain pursuant to which the state sentence Oses had ostensibly been serving until October 1991 (when his conviction was vacated) was formally deemed—through a "back-dated" discharge—to have been completed in June of 1985. Thus, the state by sleight of hand sought to disavow formal responsibility for Oses' state imprisonment from 1985 onward. While the state may content itself with this "back-to-the-future" contrivance as a way to dispose of Oses' post–1985 state time, the federal government is not obliged to acquiesce. The state cannot by its constructive reconceptualization of Oses' post–1985 time in state prison alter the terms of his federal consecutive sentence. Indeed, it is no doubt in part because the federal government has no effective control over such bizarre exercises of state sentencing powers that a consecutive federal sentence will not under § 3568 be deemed to commence until the defendant is received by federal authorities for service of time "in connection with" the *federal* offense.

The statutorily mandated determination by the Bureau of Prisons not to grant Oses the full amount of credit he seeks is not constitutionally proscribed; it accords with fundamental constitutional precepts. Furthermore, it serves to vindicate the decision of the federal trial judge that a proper federal sentence for Oses would be four years to be served consecutively to the time actually attributable to the state sentence imposed in 1977.[11]

The federal government has the right to exact a term of federal imprisonment from a

11. While the change of circumstances effected by the state's 1993 plea bargain with Oses makes it difficult as a formal linguistic matter to implement the precise direction of the federal sentencing judge that Oses' federal sentence be "consecutive to the life sentence imposed by the Massachusetts state court on July 8, 1977 ...," the import of that direction is clear: Oses' federal sentence was not to commence until the state no

longer actually had him in custody. This treatment of the issue is in keeping with the traditional federal approach to the concept of consecutive sentences as reflected in the current federal sentencing guidelines. For example, U.S.S.G. § 5G1.3 provides that when an offense is committed while the defendant is subject to an undischarged term of imprisonment for a separate prior crime, the sentence for the new offense

person convicted of a federal offense, *regardless* of the manner in which a state government has chosen to punish that person for an unrelated state offense. The petitioner has been given credit for all time he has arguably served in connection with his federal offense, disregarding the state's decision to "back-date" Oses' discharge from state custody. He is entitled to no more.

### IV. CONCLUSION

For the reasons set forth more fully above, the petition for the writ of habeas corpus is hereby DENIED.

should run consecutively, § 5G1.3(a), thereby reflecting the independent criminal character of each offense.